Ruth v Elderwood At Amherst (2022 NY Slip Op 05637)

Ruth v Elderwood At Amherst

2022 NY Slip Op 05637

Decided on October 7, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 7, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, NEMOYER, AND BANNISTER, JJ.

712 CA 22-00069

[*1]ANTONELLA RUTH, AS ADMINISTRATOR OF THE ESTATE OF LUCIA CONSIGLIO, DECEASED, PLAINTIFF-APPELLANT,
v
ELDERWOOD AT AMHERST, ELDERWOOD AT WILLIAMSVILLE, 4459 BAILEY AVENUE OPERATING COMPANY, LLC, 4459 BAILEY AVENUE, LLC, 200 BASSETT ROAD OPERATING COMPANY, LLC, 200 BASSETT ROAD, LLC, POST ACUTE PARTNERS MANAGEMENT, LLC, JEFFREY RUBIN, D.M.D., AND WARREN COLE, DEFENDANTS-RESPONDENTS. 

LAW OFFICE OF KENNETH R. HILLER, AMHERST (TIMOTHY HILLER OF COUNSEL), FOR PLAINTIFF-APPELLANT. 
HURWITZ & FINE, P.C., BUFFALO (TODD C. BUSHWAY OF COUNSEL), BUFFALO, FOR DEFENDANTS-RESPONDENTS.
O'CONNELL AND ARONOWITZ, ALBANY (CORNELIUS D. MURRAY OF COUNSEL), FOR THE NEW YORK STATE HEALTH FACILITIES ASSOCIATION, INC., THE GREATER NEW YORK HEALTH CARE FACILITIES ASSOCIATION AND THE SOUTHERN NEW YORK ASSOCIATION, AMICI CURIAE.
GREENBERG TRAURIG, LLP, ALBANY (HENRY M. GREENBERG OF COUNSEL), FOR GREATER NEW YORK HOSPITAL ASSOCIATION AND THE HEALTHCARE ASSOCIATION OF NEW YORK STATE, INC., AMICI CURIAE.
HOLWELL, SHUSTER & GOLDBERG LLP, NEW YORK CITY (VINCENT LEVY OF COUNSEL), FOR CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, AMERICAN PROPERTY CASUALTY INSURANCE ASSOCIATION, NEW YORK INSURANCE ASSOCIATION, INC., AMERICAN TORT REFORM ASSOCIATION, LAWSUIT REFORM ALLIANCE OF NEW YORK, CENTER FOR JURISPRUDENCE, INC., RESTAURANT LAW CENTER, AND NEW YORK STATE RESTAURANT ASSOCIATION, AMICI CURIAE.
CENTER FOR ELDER LAW & JUSTICE, BUFFALO (BRIA A. LEWIS OF COUNSEL), FOR CENTER FOR ELDER LAW & JUSTICE AND EMPIRE JUSTICE CENTER, AMICI CURIAE.

 Appeal from an order of the Supreme Court, Erie County (Mark J. Grisanti, A.J.), entered August 5, 2021. The order granted defendants' motion to dismiss plaintiff's complaint. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this action arising from the death of plaintiff's decedent from COVID-19 following treatment at certain nursing homes in March and April 2020, plaintiff appeals from an order that granted defendants' pre-answer motion to dismiss the complaint on the ground that, pursuant to the Emergency or Disaster Treatment Protection Act (EDTPA) [*2](Public Health Law former art 30-D, §§ 3080-3082), defendants were immune from liability for the causes of action as alleged in the complaint. We affirm.
By way of background, at the outset of the COVID-19 pandemic in early 2020, then-Governor Cuomo signed executive orders declaring a disaster emergency in New York State (see Executive Order [A. Cuomo] No. 202 [9 NYCRR 8.202]) and, among other things, granting health care workers immunity from civil liability, except for instances of gross negligence, for any injury or death alleged to have been sustained directly as a result of providing medical services in support of the State's response to the COVID-19 outbreak (see Executive Order [A. Cuomo] No. 202.10 [9 NYCRR 8.202.10]).
The legislature thereafter enacted EDTPA, which was part of an omnibus budget bill (see L 2020, ch 56), upon the recognition that "[a] public health emergency that occurs on a statewide basis requires an enormous response from state and federal and local governments working in concert with private and public health care providers in the community," and that "[t]he furnishing of treatment of patients during such a public health emergency is a matter of vital state concern affecting the public health, safety and welfare of all citizens" (Public Health Law former § 3080). The stated purpose of the legislation was "to promote the public health, safety and welfare of all citizens by broadly protecting the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency" (id.).
EDTPA initially provided, with certain exceptions, that "any health care facility or health care professional shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services" as long as three conditions were met: the services were arranged for or provided pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law; the act or omission was impacted by decisions or activities that were in response to or as a result of the COVID-19 outbreak and in support of the State's directives; and the services were arranged or provided in good faith (Public Health Law former § 3082 [1]). Health care facilities included nursing homes (see former § 3081 [3]), and health care professionals included individual medical providers as well as administrators and executives of health care facilities (see former § 3081 [4]). The health care services covered by the immunity provision included those related to the diagnosis, prevention, or treatment of COVID-19; the assessment or care of an individual with a confirmed or suspected case of COVID-19; and the care of any other individual who presented at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration (see former § 3081 [5]). The immunity conferred by EDTPA did not apply, however, "if the harm or damages were caused by an act or omission constituting willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm by the health care facility or health care professional" (former § 3082 [2]). Although EDTPA was not signed into law until April 3, 2020, the legislature provided that the statute would "take effect immediately and shall be deemed to have been in full force and effect on or after March 7, 2020" and that it would apply to acts or omissions that occurred on or after the date of the COVID-19 emergency declaration (L 2020, ch 56, § 1; part GGG,
§ 2).
The legislature amended EDTPA in August 2020 to limit certain aspects of the immunity (see L 2020, ch 134, §§ 1-2). The legislature provided that the amendment would take effect immediately and would apply to claims for harm or damages if the act or omission occurred on or after the effective date of the amendment (see L 2020, ch 134, § 3). On April 6, 2021, just over one year after it was first enacted, EDTPA was repealed; the legislation provided simply that EDTPA was repealed and that "[t]his act shall take effect immediately" (L 2021, ch 96, §§ 1-2).
Plaintiff commenced the present action one week later, alleging, as relevant here, that decedent, a long-term nursing home resident, was not properly tested and treated for COVID-19 at defendant Elderwood at Williamsville in late March and early April 2020, despite exhibiting persistent symptoms associated with infection by the virus that causes COVID-19, and that decedent was not adequately treated for COVID-19 and a stroke when she tested positive for COVID-19 and was transferred to defendant Elderwood at Amherst. Plaintiff asserted causes of [*3]action for negligence, violation of Public Health Law
§§ 2801-d and 2803-c, deprivation of dignity, medical malpractice, and wrongful death.
Defendants made a pre-answer motion to dismiss pursuant to CPLR 3211 on the ground that, under EDTPA, they were immune from liability for the causes of action alleged in the complaint. Plaintiff opposed the motion by contending, among other things, that defendants were not immune from liability for the causes of action alleged in the complaint because EDTPA had been repealed and the repeal should apply retroactively. Supreme Court determined that the repeal of EDTPA did not apply retroactively and that the immunity conferred by EDTPA warranted dismissal of the complaint.
As a preliminary matter, although we agree with defendants that proof of service of the notice of appeal should have been included in the record (see 22 NYCRR 1000.7 [a]), we conclude that dismissal of the appeal is not warranted because, contrary to defendants' contention, the absence of such proof of service "does not 'render[ ] meaningful appellate review impossible' " (Eldridge v Shaw, 99 AD3d 1224, 1226 [4th Dept 2012]; see Luppino v Flannery, 186 AD3d 1082, 1083 [4th Dept 2020]). Defendants do not deny being served with the e-filed notice of appeal simultaneously with the electronic filing of that document (see 22 NYCRR 202.5-b [f] [2] [ii]; 202.5-bb [a] [1]; 1245.7 [b]; Siegel & Connors, NY Prac § 202 at 380 [6th ed 2018]), and we therefore disregard the technical, nonprejudicial omission from the record of the proof of service (see CPLR 2001; Ninth Space LLC v Goldman, 189 AD3d 686, 686 [1st Dept 2020]) and take judicial notice of the electronic notification sent to defendants confirming that plaintiff had e-filed the notice of appeal (see generally McCann v Gordon, 204 AD3d 1449, 1449 [4th Dept 2022], appeal dismissed 38 NY3d 1158 [2022]; Ninth Space LLC, 189 AD3d at 686), which constitutes proof of service (see 22 NYCRR 202.5-b [f] [2] [ii]; 1245.7 [b]; see also Siegel & Connors, NY Prac § 531 [6th ed 2018, Cumulative Supp]).
On the merits of the appeal, plaintiff contends that the court erred in granting defendants' motion to dismiss the complaint based on the immunity conferred by EDTPA because, contrary to the court's determination, the repeal of that statute applies retroactively to remove liability protection for conduct that occurred while EDTPA was in effect.
When conducting a retroactivity analysis, a court must first assess whether applying the new law to conduct that occurred prior to its enactment "truly implicates the concerns historically associated with retroactive application of new legislation" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 365 [2020], rearg denied 35 NY3d 1079, 1081 [2020]). In that regard, "application of a new statute to conduct that has already occurred may, but does not necessarily, have 'retroactive' effect upsetting reliance interests and triggering fundamental concerns about fairness" (id.). In determining whether legislation has retroactive effect, " 'the court must ask whether the new provision attaches new legal consequences to events completed before its enactment' " (American Economy Ins. Co. v State of New York, 30 NY3d 136, 147 [2017], cert denied — US &mdash, 138 S Ct 2601 [2018]). "A statute has retroactive effect if 'it would impair rights a party possessed when [the party] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed,' thus impacting 'substantive' rights" (Regina Metro. Co., LLC, 35 NY3d at 365; see Landgraf v USI Film Prods., 511 US 244, 278-280 [1994]; see also General Construction Law § 93). Therefore, "the 'extent of a party's liability, in the civil context as well as the criminal, is an important legal consequence' in determining retroactivity" (Regina Metro. Co., LLC, 35 NY3d at 367). "On the other hand, a statute that affects only 'the propriety of prospective relief' or the nonsubstantive provisions governing the procedure for adjudication of a claim going forward has no potentially problematic retroactive effect even when the liability arises from past conduct" (id. at 365). Where legislation, "if applied to past conduct, would impact substantive rights and have retroactive effect, the presumption against retroactivity is triggered" (id. at 370).
When the presumption is triggered, "a statute is presumed to apply only prospectively" (id.). "This 'deeply rooted' presumption against retroactivity is based on '[e]lementary considerations of fairness [that] dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly' " (id.). "[C]areful consideration of retroactive statutes is warranted because '[t]he [l]egislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration' and '[i]ts [*4]responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals' " (id.).
"In light of these concerns, [i]t takes a clear expression of the legislative purpose . . . to justify a retroactive application of a statute . . . , which assures that [the legislative body] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits" (id. [internal quotation marks omitted]; see People v Galindo, 38 NY3d 199, 207 [2022]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]; Jacobus v Colgate, 217 NY 235, 240 [1916, Cardozo, J.]). "The ultimate question . . . , therefore, is one of statutory interpretation: whether the legislature has expressed a sufficiently clear intent to apply the [legislation] retroactively" (Regina Metro. Co., LLC, 35 NY3d at 370). "There is certainly no requirement that particular words be used—and, in some instances, retroactive intent can be discerned from the nature of the legislation" (id.). "But the expression of intent must be sufficient to show that the legislature contemplated the retroactive impact on substantive rights and intended that extraordinary result" (id. at 370-371).
Plaintiff first asserts that applying the repeal of immunity previously conferred under state law to conduct that occurred when EDTPA was in effect would not impact defendants' substantive rights, and thus the presumption against retroactivity is not triggered, because defendants at all times were bound by federal laws and regulations under which they remained liable for negligent nursing home care. We reject that assertion.
Even assuming, arguendo, that certain defendants remained subject to potential or actual federal enforcement remedies for any misconduct similar or equivalent to that alleged in the complaint here (see e.g. 42 CFR 483.10, 483.12, 483.25, 488.406), we conclude that applying the repeal of the immunity conferred by EDTPA to defendants' past acts or omissions would "expand[] the scope of [defendants'] liability significantly based on conduct that was inoculated by the old law" (Regina Metro. Co., LLC, 35 NY3d at 368 [emphasis added]). In particular, at the time of the events alleged in the complaint, EDTPA provided health care facilities and professionals with immunity from, inter alia, civil liability for negligence and medical malpractice while providing health care services under the requisite conditions during the COVID-19 emergency (see Public Health Law former § 3082 [1], [2]). In other words, even if certain defendants here faced the prospect of federal regulatory penalties, they were otherwise protected from liability in state civil actions for any harm or damages caused by acts or omissions other than intentional criminal misconduct or infliction of harm, gross negligence, or reckless misconduct (see id.). Thus, applying the repeal to remove immunity for conduct that occurred when EDTPA was in effect would "undoubtedly impose . . . a new disability in respect to past events" and "clearly increase[] the scope of liability for past wrongs" (Regina Metro. Co., LLC, 35 NY3d at 367 [internal quotation marks omitted]). Defendants would now, in addition to any federal regulatory penalties, face entirely separate liability in state civil actions for conduct that was inoculated by EDTPA. We have considered plaintiff's remaining assertions on this issue and conclude that they lack merit.
We thus conclude that applying the repeal of EDTPA to the allegations in the complaint would have retroactive effect "by impairing rights [defendants] possessed in the past, increasing their liability for past conduct and imposing new duties with respect to transactions already completed" (Regina Metro. Co., LLC, 35 NY3d at 369). "Because the [repeal of EDTPA], if applied to past conduct, would impact substantive rights and have retroactive effect, the presumption against retroactivity is triggered" (id. at 370).
Plaintiff nonetheless asserts that, even though the text of the repeal legislation does not expressly provide for retroactive application, the presumption against retroactivity is overcome because the legislative history and the nature and circumstances of the legislation provide a clear expression of the legislature's intent for the repeal to apply retroactively. We reject that assertion as well.
Initially, the parties dispute whether the repeal of EDTPA constitutes remedial legislation. We agree with defendants, however, that even assuming the repeal of EDTPA is properly classified as remedial, that classification is largely immaterial. Courts have "limit[ed] the continued utility of the tenet that new 'remedial' statutes apply presumptively to pending cases" [*5](Regina Metro. Co., LLC, 35 NY3d at 365). Moreover, "[c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to 'supply some defect or abridge some superfluity in the former law' " (Majewski, 91 NY2d at 584; see Gottwald v Sebert, 203 AD3d 488, 488-489 [1st Dept 2022]). The Court of Appeals has thus cautioned against placing too much reliance on the remedial nature of legislation, noting that such " '[g]eneral principles may serve as guides in the search for the intention of the [l]egislature in a particular case but only where better guides are not available' " (Majewski, 91 NY2d at 584). To that end, inasmuch "[a]s the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself" (id. at 583), and "legislative history may also be considered as an aid to interpretation" (Regina Metro. Co., LLC, 35 NY3d at 352; see Majewski, 91 NY2d at 584).
Here, "[n]othing in the text 'expressly or by necessary implication' requires retroactive application of the [repeal]" (Galindo, 38 NY3d at 207, quoting Majewski, 91 NY2d at 584). First, as plaintiff acknowledges, the text of the repeal legislation, unlike the legislation originally enacting EDTPA (see L 2020, ch 56, § 1; part GGG, § 2), does not contain an express statement requiring retroactive application (see L 2021, ch 96, §§ 1-2). Second, plaintiff's claim that we may infer retroactive intent from the remedial purpose of the repeal coupled with the sense of urgency with which the legislature acted in having the repeal take effect immediately is without merit. Although the text of the legislation provides that the repeal is to "take effect immediately" (L 2021, ch 96, § 2), "the date that legislation is to take effect is a separate question from whether the [legislation] should apply to claims and rights then in existence" (Majewski, 91 NY2d at 583). "While the fact that a statute is to take effect immediately 'evinces a sense of urgency,' 'the meaning of the phrase is equivocal' in an analysis of retroactivity" (id., quoting Becker v Huss Co., 43 NY2d 527, 541 [1978]; see Gottwald, 203 AD3d at 489). Consequently, the assumption that the repeal of EDTPA is remedial and the fact that the legislature provided that the repeal shall take effect immediately "[do] not support the conclusion that the legislature intended retroactive application of the [repeal]" (Gottwald, 203 AD3d at 489).
Plaintiff nevertheless maintains that the legislative sponsors' memoranda demonstrate that the legislature intended the repeal to apply retroactively. We reject that assertion.
The memoranda indicate that the purpose of the legislation was to repeal EDTPA "with the intent of holding health care facilities, administrators, and executives accountable for harm and damages incurred" (Assembly Introducer's Mem in Support, Bill Jacket, L 2021, ch 96; see also Sponsor's Mem, 2021 NY Senate Bill S5177). As justification for the repeal, the memoranda provide, in relevant part, that "[a]s the COVID-19 pandemic has progressed in New York State, it is now apparent that negligence by administrators and executives of nursing homes has occurred at an extraordinary degree. The consequences have been tragic: as of early May 2020, . . . thousand[s] of New York's elderly and most vulnerable residents have succumbed to this disease, and to date, there has been zero accountability nor transparency for these preventable deaths . . . In particular, [EDTPA] egregiously uses severe liability standards as a means to insulate health care facilities and specifically, administrators and executives of such facilities, from any civil or criminal liability for negligence. Repealing this article is a much-needed step to holding health care administrators accountable and doing everything possible to stop even more preventable deaths from happening" (id.; see also Sponsor's Mem, 2021 NY Senate Bill S5177).
We conclude that "[t]he memorand[a] submitted by the [legislators] who introduced the bill . . . [are], at best, inconclusive" on the issue of retroactivity (Matter of Berson [Corsi], 283 App Div 190, 193 [3d Dept 1953]; see e.g. Matter of Walsh v New York State Comptroller, 34 NY3d 520, 527 [2019]; Matter of Niagara Mohawk Power Corp. v Public Serv. Commn. of State of N.Y., 69 NY2d 365, 374 [1987], rearg denied 69 NY2d 1038 [1987]; see generally Simmons v Trans Express Inc., 37 NY3d 107, 114 [2021]), and thus fall far from "a clear expression of the legislative purpose . . . to justify a retroactive application" of the repeal (Regina Metro. Co., LLC, 35 NY3d at 370 [internal quotation marks omitted]). In particular, although the memoranda refer to holding facilities, administrators, and executives accountable for harm and damages "incurred"—a past tense construction that generally relates to past transactions (see Agawam Bank v Strever, 18 NY 502, 508 [1859])—the absence of temporal language renders the memoranda equally susceptible to the interpretation that the legislature, recognizing the consequences of its enactment of EDTPA, intended to reverse course on policy and hold nursing [*6]home facilities accountable for any harm and damages "incurred" by their residents going forward (see Matter of Lee E. B., 39 NY2d 962, 963 [1976]). Moreover, while the memoranda are ambiguous regarding the time period for which the legislature sought to now hold nursing home facilities accountable for negligence, the memoranda are otherwise unambiguous that the repeal of EDTPA was thought to be a step toward stopping additional preventable deaths from happening in the future (see Assembly Mem in Support, Bill Jacket, L 2021, ch 96; Sponsor's Mem, 2021 NY Senate Bill S5177). In other words, the memoranda are clear on the prospective application of the repeal and provide, at most, only the faintest glimmer of intent to remove the immunity conferred by EDTPA retroactively. Consequently, "[t]he language of the [repeal] does not clearly indicate that it should be applied retroactively, nor does examination of the available legislative [sponsors' memoranda] offer up any definitive expression that it was intended to have . . . retrospective application" (Matter of Thomas v Bethlehem Steel Corp., 63 NY2d 150, 154 [1984]).
Contrary to plaintiff's further assertion, we agree with defendants that the legislative floor debates also support the conclusion that the legislature intended the repeal to apply prospectively only rather than retrospectively. Although the declarations of legislators during floor debates "must be cautiously used" as indicators of legislative intent, "these averments 'may be accorded some weight in the absence of more definitive manifestations of legislative purpose' " (Majewski, 91 NY2d at 586).
Here, during the floor debate in the Senate, the first senator to speak in support of the bill expressed her understanding that the repeal was "prospective" and would "apply going forward" by restoring the standards of liability to the health care profession in light of the lessons learned over the prior year when EDTPA was in place (NY Senate Debate on Senate Bill S5177, Mar. 24, 2021 at 1834-1836). The sponsor of the bill in the Senate, who was the only other senator to speak regarding the bill and did so after the first senator, did not directly address retroactive application, nor did she dispute the first senator's stated understanding that the repeal was to apply prospectively (see id. at 1836-1838).
During floor debate in the Assembly, although the sponsor of the bill expressed his belief that the repeal of the immunity conferred by EDTPA should apply retroactively, especially with respect to corporate entities and executives, he repeatedly emphasized that, given the absence of express language in the text of the legislation, it would ultimately be left up to the courts to decide whether the repeal of the liability protections should be applied retroactively (see NY Assembly Debate on Assembly Bill A3397, Mar. 4, 2021 at 45, 48-49, 62-63, 67-68). Other members, however, expressed concern that retroactive application of the repeal legislation would expose frontline health care workers to liability for treatment they provided at the beginning of the pandemic when far less was known about how to provide appropriate treatment for the novel virus and such workers were tasked with providing care under extraordinary circumstances (see id. at 44-46, 50-52, 58, 62, 64-67, 70-72, 84-86). In light of those concerns, and on the ground that the repeal of immunity and the accompanying return to standard liability norms was justified by the fact that medical knowledge and treatment protocols had developed in the year since the onset of the pandemic, the other members who spoke during the debate expressed nearly uniform understanding that the repeal would apply prospectively only, not retroactively (see id. at 45, 48, 53, 58-60, 65-66, 73, 77-78, 82, 84-86, 90-93). Some members also agreed with the sentiment that the question of retroactive application would ultimately be decided by the courts (see id. at 53-54, 60, 68, 77-78).
The floor debates in the Senate and Assembly thus strongly support the conclusion that the legislature intended the repeal to apply prospectively only and, in any event, the debates contain "nothing that approaches any type of 'clear' expression of legislative intent concerning retroactive application" (Majewski, 91 NY2d at 589). Even though certain members of the Assembly may have sought to have the issue of retroactivity "deliberately left to the courts" (Becker, 43 NY2d at 541), the legislative history shows that the legislature considered retroactive application of the repeal and yet provided the courts with no clear pronouncement of its intent to recalibrate rights and change public policy by retroactively removing the immunity conferred by EDTPA (see Morales v Gross, 230 AD2d 7, 10-11 [2d Dept 1997]; see generally Regina Metro. Co., LLC, 35 NY3d at 348). Moreover, to the extent that plaintiff seeks to rely on the affidavit of the Assembly sponsor submitted in other litigation subsequent to the repeal of EDTPA as evidence of legislative intent, we note that "postenactment statements or testimony by an [*7]individual legislator, even a sponsor, is [generally] irrelevant," and here we discern no extraordinary circumstances that would warrant consideration of the affidavit (Civil Serv. Empls. Assn. v County of Oneida, 78 AD2d 1004, 1005 [4th Dept 1980], lv denied 53 NY2d 603 [1981]). Consequently, the expressions of legislative intent are insufficient to show that the legislature, having "contemplated the retroactive impact on substantive rights," nonetheless "intended that extraordinary result" (Regina Metro. Co., LLC, 35 NY3d at 370-371).
Based on the foregoing, we conclude that the repeal of EDTPA does not apply retroactively. In light of that determination, there is no need to analyze whether retroactive application of the repeal would comport with the constitutional requirements of due process (cf. id. at 374-375). The court thus properly determined that defendants were entitled to the immunity from liability conferred by EDTPA. Finally, by failing to raise a contention in her brief opposing the dismissal of her complaint on any other ground, plaintiff has abandoned any further challenge to the court's order (see Tucker v Kalos Health, Inc., 202 AD3d 1505, 1506 [4th Dept 2022]; Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]).
Entered: October 7, 2022
Ann Dillon Flynn
Clerk of the Court