Whitehead v Pine Haven Operating LLC (2023 NY Slip Op 06180)

Whitehead v Pine Haven Operating LLC

2023 NY Slip Op 06180

Decided on November 30, 2023

Appellate Division, Third Department

Ceresia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 30, 2023

535767

[*1]Thomas N. Whitehead, as Executor of the Estate of Janis H. Tipple, Deceased, Respondent,
v
Pine Haven Operating LLC, Doing Business as Pine Haven Nursing and Rehabilitation Center, et al., Appellants, et al., Defendants.

Calendar Date:October 13, 2023

Before: Egan Jr., J.P., Clark, Ceresia, McShan and Powers, JJ.

Hall Booth Smith, PC, New York City (Jeffrey T. Wolber of counsel) and Phelan, Phelan & Danek, LLP, Albany (Marie Flynn Danek of counsel), for appellants.
Napoli Shkolnik PLLC, Melville (Scott T. Horn of Mischel & Horn, PC, New York City, of counsel), for respondent.
Greenberg Traurig, LLP, Albany (Henry M. Greenberg of counsel), for Greater New York Hospital Association and another, amici curiae.

Ceresia, J.
Appeal from an order of the Supreme Court (Henry F. Zwack, J.), entered June 8, 2022 in Columbia County, which partially granted a motion by defendants Pine Haven Operating LLC and Pine Haven Nursing and Rehabilitation Center to dismiss the complaint.
Janis H. Tipple (hereinafter decedent) resided at Pine Haven Nursing and Rehabilitation Center in the Village of Philmont, Columbia County, from July 2017 until April 2020, when she died as a result of contracting COVID-19. Plaintiff, the executor of decedent's estate, thereafter commenced this negligence action, alleging a failure on the part of the nursing home to take the proper steps to protect decedent from COVID-19. Defendants Pine Haven Operating LLC and Pine Haven Nursing and Rehabilitation Center (hereinafter collectively referred to as defendants) moved to dismiss the complaint, arguing, as pertinent here, that they were entitled to immunity under the federal Public Readiness and Emergency Preparedness Act (42 USC § 247d-6d), the state Emergency or Disaster Treatment Protection Act (Public Health Law former art 30-D, §§ 3080-3082 [hereinafter the EDTPA]), and Executive Order (A. Cuomo) No. 202.10 (9 NYCRR 8.202.10). Supreme Court determined that defendants were not entitled to immunity on any ground, granted defendants' motion to the extent of dismissing plaintiff's cause of action for negligence per se for failure to state a cause of actionand denied the motion with respect to the remaining causes of action. Defendants appeal.
We turn first to defendants' argument concerning immunity under the EDTPA. Effective March 7, 2020, the EDTPA recognized the public health emergency brought on by the novel coronavirus responsible for causing COVID-19 and sought to "broadly protect[ ] the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency" (Public Health Law former § 3080). Thus, the EDTPA conferred immunity for health care services rendered in response to the COVID-19 pandemic, with limited exceptions (see Public Health Law former §§ 3081, 3082). Inasmuch as the EDTPA was eventually repealed in April 2021 (see L 2021, ch 96, § 1), we are now tasked with determining whether the legislation repealing the EDTPA should be applied retroactively, thereby exposing defendants to potential liability, a matter of first impression for this Court.[FN1]
Where, as here, legislation " 'would impair rights a party possessed when he [or she] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed,' " a presumption against retroactivity applies (Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 365 [2020], quoting Landgraf v USI Film Products, 511 US 244, 280 [1994]). There is also a statutory presumption against retroactivity in the case [*2]of legislation that repeals an earlier statute (see General Construction Law § 93; People v Roper, 259 NY 635, 635 [1932]). In instances where there is a presumption against retroactivity, a statute will be deemed to apply prospectively, in the absence of plain legislative intent to the contrary (see Majewski v Broadalbin-Perth Cent. School Dist., 231 AD2d 102, 105 [3d Dept 1997], affd 91 NY2d 577 [1998]). Indeed, it is axiomatic that a clear expression of intended retroactivity by the Legislature is required "because such a statement constitutes evidence that the Legislature has affirmatively assessed the potential for unfairness created by retroactivity and concluded that it is an acceptable price to pay for the anticipated benefits" (id. at 106 [internal quotation marks and citation omitted]; see Ruth v Elderwood at Amherst, 209 AD3d 1281, 1285 [4th Dept 2022]). The text of the statute is "the best indicator of legislative intent, . . . [while] legislative history may also be considered as an aid to interpretation" (Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 352).
When the Legislature initially enacted the EDTPA on April 3, 2020, it expressed plainly its intent that the legislation be applied retroactively, stating that the EDTPA would "take effect immediately and [would] be deemed to have been in full force and effect on or after March 7, 2020" (L 2020, ch 56, pt GGG, § 2). Several months later, however, when amending the EDTPA to limit certain aspects of the immunity conferred, the Legislature did not include any retroactivity language, but instead stated that the amendments would "take effect immediately" and would apply to harm that "occurred on or after such effective date" (L 2020, ch 134, § 3). Similarly, the ultimate repeal of the EDTPA contained no express indicator of retroactivity — rather, the Legislature simply stated that the repeal would "take effect immediately" (L 2021, ch 96, § 1), a phrase that is equivocal at best in retroactivity analysis (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]; Ruth v Elderwood at Amherst, 209 AD3d at 1287-1288).
As for the legislative history of the repeal, the sponsoring memoranda do not directly address the issue of retroactivity (see Assembly Mem in Support, Bill Jacket, L 2021, ch 96; Senate Introducer's Mem in Support of 2021 NY Senate Bill S5177, enacted as L 2021, ch 96; Ruth v Elderwood at Amherst, 209 AD3d at 1288-1289). With regard to the legislative floor debates, which "may be accorded some weight in the absence of more definitive manifestations of legislative purpose" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d at 586 [internal quotation marks and citation omitted]), the Assembly sponsor indicated his personal belief that the repeal should be retroactive but acknowledged that the bill as drafted contained no retroactivity language and repeatedly stated that the matter would ultimately be left to the [*3]courts to resolve, an assertion echoed by several of his colleagues (see NY Assembly Debate on Assembly Bill A3397, Mar. 4, 2021 at 45-46, 49, 53-54, 57, 60, 62-63, 67-68, 77-78).[FN2] Numerous members indicated an intent, expectation or hope that the repeal would be applied prospectively, and two members of the Health Committee stated that the committee understood that the repeal would not be retroactive (see NY Assembly Debate on Assembly Bill A3397, Mar. 4, 2021 at45, 48, 60, 65-67, 73, 82, 84, 86, 90-93). The only comment on the Senate floor regarding this issue was one senator's statement that her understanding was that the repeal would be prospective and liability would be applied going forward (see NY Senate Debate on Senate Bill S5177, Mar. 24, 2021 at 1834). On balance, the legislative history of the repeal weighs against its retroactive application.
Turning to plaintiff's argument that retroactivity is appropriate because the repeal was remedial in nature, "[c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to supply some defect or abridge some superfluity in the former law" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d at 584 [internal quotation marks and citation omitted]; see Raparthi v Clark, 214 AD3d 613, 614 [1st Dept 2023]; Matter of Mills v Staffking [Hidden Val.], 271 AD2d 146, 148 [3d Dept 2000]). Based upon all of the foregoing, and noting that the retroactive application of the repeal of the EDTPA would merely punish healthcare providers "for past conduct they cannot change — an objective [that has been] deemed illegitimate as a justification for retroactivity" (Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 384), we hold that the repeal of the EDTPA was not retroactive (see Ruth v Elderwood at Amherst, 209 AD3d at 1291).
Given this ruling, we must next determine whether defendants established that they are entitled to the immunity protection conferred by the EDTPA, such that plaintiff's remaining causes of action should be dismissed. In their dismissal motion, defendants contended that the EDTPA shielded them from liability and that plaintiff had therefore failed to state a cause of action, while plaintiff countered that even if the repeal of the EDTPA was not retroactive, defendants were not entitled to invoke the protections of the EDTPA because its terms did not apply to defendants. On a motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a claim, the facts alleged in the complaint are typically accepted as true and the plaintiff is accorded every favorable inference (see Brown v University of Rochester, 216 AD3d 1328, 1330 [3d Dept 2023]). However, where the movant provides evidence extrinsic to the complaint in support of the motion, a court "need not assume the truthfulness of the pleaded allegations. Instead, the criterion is whether the proponent [*4]of the pleading actually has a cause of action, not whether he [or she] has properly stated one" (Henderson v United Parcel Serv., 252 AD2d 865, 866 [3d Dept 1998] [internal quotation marks, ellipsis, brackets and citations omitted]; see Matter of Parvaz v Public Serv. Commn., 201 AD3d 1211, 1213-1214 [3d Dept 2022], lv dismissed & denied 38 NY3d 1029 [2022]). In such instance, the plaintiff "no longer can rely only on the unsupported factual allegations of the pleading, but must submit evidence demonstrating the existence of a cause of action" (Matter of La Barbera v Town of Woodstock, 29 AD3d 1054, 1055 [3d Dept 2006], lv dismissed 7 NY3d 844 [2006]).
Defendants, in support of their motion, submitted the sworn affidavit of Valerie Lattrell, director of nursing at Pine Haven Nursing and Rehabilitation Center. Lattrell affirmed that, beginning in early March 2020, the nursing home staff administered numerous state- and FDA-approved medical supplies on a daily basis in order to monitor, diagnose, treat and prevent the spread of COVID-19, and did so in good faith. Lattrell also averred that all infection control policies and activities were conducted based upon informed decision-making, considering the availability, perceived efficacy and anticipated future availability of products as well as the evolving federal and state regulatory guidance. According to Lattrell, decedent's care was impacted by the facility's response to COVID-19 in that her visitation was restricted; employees who provided her care were screened for COVID-19; her dining services were restricted to in-unit tray service; she was examined by an infectious disease doctor; she was administered a COVID-19 test and placed on droplet precautions pending the result of that test; her vital signs were monitored; and she was administered medications and treatments for COVID-19 and to mitigate the effects thereof. Lattrell also noted that an inspection of the facility by the Department of Health in April 2020 revealed zero deficiencies relating to management of COVID-19 and compliance with applicable procedures.
The Lattrell affidavit unquestionably establishes that the care provided to decedent "occur[red] in the course of arranging for or providing health care services and the treatment of [decedent was] impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives" (Public Health Law former § 3082 [1] [b]) and, further, that such health care services were provided in good faith (see Public Health Law former § 3082 [1] [c]), as required to demonstrate defendants' entitlement to immunity from civil liability (see Public Health Law former § 3082 [1]). The two-page excerpt of decedent's medical chart submitted by plaintiff in opposition to the motion fails to sufficiently refute Lattrell's sworn allegations regarding decedent's care. Additionally, with specific respect [*5]to plaintiff's cause of action for gross negligence — a statutory carveout to EDTPA immunity — this claim consists of nothing more than "bare legal conclusions with no factual specificity[, which] do not suffice to withstand a motion to dismiss" (Mid-Hudson Val. Fed. Credit Union v Quartararo & Lois, PLLC, 155 AD3d 1218, 1219 [3d Dept 2017], affd 31 NY3d 1090 [2018]; see Godfrey v Spano, 13 NY3d 358, 373 [2009]). Accordingly, defendants were entitled to dismissal of all causes of action. In view of our conclusions herein, we need not address the alternative grounds for dismissal raised by defendants.
Egan Jr., J.P., Clark, McShan and Powers, JJ., concur.
ORDERED that the order is modified, on the law, with costs, by reversing so much thereof as denied the motion of defendants Pine Haven Operating LLC and Pine Haven Nursing and Rehabilitation Center to dismiss the first, second, fourth, fifth, sixth, seventh and eighth causes of action; motion granted to that extent and complaint dismissed; and, as so modified, affirmed.

Footnotes

Footnote 1: The Fourth Department has held that the repeal of the EDTPA was not retroactive (see Ruth v Elderwood at Amherst, 209 AD3d 1281 [4th Dept 2022]).

Footnote 2: We acknowledge that plaintiff submitted an affidavit from the Assembly sponsor, dated after the passage of the repeal, as evidence of legislative intent, but "postenactment statements or testimony by an individual legislator, even a sponsor, [are] generally irrelevant" (Ruth v Elderwood at Amherst, 209 AD3d at 1291 [internal quotation marks, brackets and citation omitted]). In any event, we disagree with the sponsor's characterization of his own testimony on the floor as unequivocal on the issue of retroactivity.