Beggins v Pallotta (2025 NY Slip Op 51085(U))

[*1]

Beggins v Pallotta

2025 NY Slip Op 51085(U)

Decided on July 10, 2025

Supreme Court, Suffolk County

Whelan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 10, 2025
Supreme Court, Suffolk County

Richard Beggins and Lynette Beggins, Plaintiff,

against
Nicholas Pallotta, M.D., HARIHARAN IYER, M.D. and ALIREZA NAZEMI, M.D., Defendants.

Index No. 605574/2022

Counsel for Plaintiffs DUFFY & DUFFY, PLLC
1370 RXR Plaza 
West Tower, 13th Floor 
Uniondale, New York 11556
Phone: 516-394-4200
mcuedek@duffyduffylaw.com
Counsel for Defendant Nicholas Pallotta MD
BARKER PATTERSON NICHOLS, LLP
115 E. Stevens Avenue Suite 206
Valhalla, NY 10595
Phone: 914-495-4805
d.braverman@bpnlaw.com
Counsel for Defendants Hariharan Iyer MD and Alireza Nazemi MD
ATTORNEY GENERAL OF THE STATE OF'NEW YORK
28 Liberty St. 
New York, NY 10005
(212) 416-8518
patrick.reidy@ag.ny.gov

Thomas F. Whelan, J.

Upon the following papers numbered as indicated and read on this motion by Defendant Nicholas Pallotta, MD to dismiss: Notice of Motion/Order to Show Cause and supporting papers NYSCEF Docs. 57 - 85 ; Answering Affidavits and supporting papers NYSCEF Docs [*2]87-90; Replying Affidavits and supporting papers NYSCEF Docs. 91; it is
ORDEREDthat the defendant's motion pursuant to CPLR 3211 (a) (2) and (7) for an order dismissing the complaint is granted to the extent of dismissing so much of the complaint against him as is based upon the timeliness of suspecting, investigating, diagnosing and treating plaintiff, and is otherwise denied; and it is further
ORDERED that plaintiff's counsel and defendants' counsel are directed to appear before the Court on July 22, 2025 at 9:30am for a status conference.
In this medical malpractice case, a defendant doctor seeks an order of dismissal claiming a "blanket immunity" arising out of the statutory COVID-19 immunity that was in effect at the time of treatment. While this Court agrees that the vast majority of the allegations of the complaint must be dismissed by virtue of the immunity defense, certain allegations fall outside of the scope of the then existing COVID-19 immunity and must be submitted to the trier of the facts. 
INTRODUCTION
This medical malpractice action stems from injuries that plaintiff Richard Beggins allegedly sustained while being treated by defendant Nicholas Pallotta, MD (hereinafter, Dr. Pallotta or "the Defendant") at Stony Brook University Hospital (hereinafter "SBUH"). Mr. Beggins and co-plaintiff Lynette Beggins allege that Mr. Beggins presented to SBUH with lower back pain on May 24, 2020 and received treatment there through June 10, 2020. It is alleged as against Dr. Pallotta, in broad terms, that during this time, Dr. Pallotta allowed delay in diagnosis and treatment of Mr. Beggins' cauda equina syndrome; failed to timely and properly suspect acute spinal cord compression at L2-S1; failed to timely and properly recognize that Mr. Beggins' condition was a surgical emergency; negligently and improperly delayed performing and interpreting an MRI; negligently and improperly performing decompression surgery at L3-4; and failed to timely and properly perform surgical decompression, discectomies and a fusion with instrumentation at L2-S1, all of which caused severe and permanent injuries. Plaintiff Richard Beggins interposed claims for medical malpractice, and plaintiff Lynette Beggins alleges loss of consortium. Each defendant has filed an answer, and discovery has been completed.
Dr. Pallotta moves (#001) for dismissal of the complaint [FN1]
contending that he is immune from suit under the Emergency or Disaster Treatment Protection Act (EDTPA) (former Public Health Law [PHL] § 3080 et seq.) and the Public Readiness and Emergency Preparedness Act [*3](PREP Act) (42 USC § 247d-6d).[FN2]
The plaintiffs oppose the motion and Dr. Pallotta filed a reply. Subsequent to submission of the motion, oral argument was held on June 18, 2025.
FACTS
The facts of this case, subject to some dispute, can be summarized as follows. Mr. Beggins presented to SBHU the morning of May 24, 2020 with lower back pain. SBHU staff attempted to perform an MRI, however Mr. Beggins was unable to tolerate the procedure. Pain medication was administered and ultimately an MRI was completed. A review by SBHU staff revealed significant degenerative disc disease and spondylosis resulting in severe spinal stenosis at the L3-L4 level with near complete effacement of the thecal sac. Stenosis at L2-L3 was also observed and thought to be moderate, centrally, but severe in the paracentral regions, indicating possible cauda equina syndrome. After the MRI, Mr. Beggins began having pain and numbness in his lower legs, although his mobility in his legs was not affected.
Dr. Pallotta arrived at SBHU the morning of May 25, 2020 and was advised immediately that Mr. Beggins tested positive for COVID and that, as a result and to avoid any delay in treatment for his back, an operating room ("OR") was being set up. He testified at his deposition that by his recollection Mr. Beggins did not present to SBHU with urinary issues or motor or sensory deficits, but that such developed during that period of time and presented when Dr. Pallotta became involved in Mr. Beggins's care. Dr. Pallotta examined Mr. Beggins and noted that Mr. Beggins lacked sensation below the ankle and was unable to hold his urine. It was determined that Mr. Beggins had cauda equina syndrome and, as a result, he was taken to the OR for urgent decompression surgery.
Dr. Pallotta testified that there were special protocols in place by SBHU related to COVID positive patients being treated in the OR, which delayed any surgical interventions. In the instant matter, Dr. Pallotta testified that surgery was delayed up to 2.5 hours. He noted in his affirmation that "any perceived delay in surgery was not related to any action or inaction on my part, but the hospital's limitations due to the COVID-19 pandemic," adding that "[t]he entire environment of the hospital was affected due to concerns related to dealing with and preventing infection. This resulted in delays in communication, which impacted all aspects of plaintiff's care." (Ex. A, Affirmation of Nicholas Pallotta, M.D., ¶¶ 15-16 [NYSCEF Doc. 60]["Pallotta Affirmation"]).
CONTENTIONS OF THE PARTIES
Dr. Pallotta's position is that the EDTPA and PREP Act apply to the treatment provided herein, and the immunity defense eliminates all allegations in the complaint which are based on the assertion that the injuries were sustained when the patient's care was impacted by Dr. [*4]Pallotta's acts and decisions in response to the COVID-19 pandemic. Dr. Pallotta claims that since the acts and decisions regarding the patients's care were impacted by COVID-19 public health directives and policies, Mr. Beggins' claim is barred.
The plaintiff's main focus is that Dr. Pallotta was negligent in performing the surgery — that is, the surgical decompression and discectomy were improperly performed, notwithstanding the plaintiff's COVID-19 diagnosis and SBHU's general response to COVID-19. 
This Court must determine whether Dr. Pallotta submitted evidence conclusively establishing an immunity defense to plaintiff's claims.
1. The EDTPA and plaintiff's claims regarding treatment
PHL § 3082, at the time of Mr. Beggins' presentation to SBUH and at all relative times described herein, stated the following:
1. Notwithstanding any law to the contrary, except as provided in subdivision two of this section, any health care facility or health care professional shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services, if: (a) the health care facility or health care professional is arranging for or providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law;
(b) the act or omission occurs in the course of arranging for or providing health care services and the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and
(c) the health care facility or health care professional is arranging for or providing health care services in good faith.
2. The immunity provided by subdivision one of this section shall not apply if the harm or damages were caused by an act or omission constituting willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm by the health care facility or health care professional providing health care services, provided, however, that acts, omissions or decisions resulting from a resource or staffing shortage shall not be considered to be willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm.
PHL § 3081 (5) stated:
5. The term "health care services" means services provided by a health care facility or a health care professional, regardless of the location where those services are provided, that relate to:
(a) the diagnosis, prevention, or treatment of COVID-19;
(b) the assessment or care of an individual with a confirmed or suspected case of COVID-19; or
(c) the care of any other individual who presents at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration.
PHL § 3081 (5) was amended August 3, 2020 by deleting subsection 5(c) and limiting "health care services" to those that relate to the diagnosis, treatment, assessment or care of individual with confirmed or suspected case of COVID-19.
The preamble to PHL § 3080 set forth a broad application in response to the COVID-19 pandemic.
A public health emergency that occurs on a statewide basis requires an enormous response from state and federal and local governments working in concert with private and public health care providers in the community. The furnishing of treatment of patients during such a public health emergency is a matter of vital state concern affecting the public health, safety and welfare of all citizens. It is the purpose of this article to promote the public health, safety and welfare of all citizens by broadly protecting the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency.
(Former Public Health Law § 3080.)
Initially, courts deferred to the wisdom of the Legislature and declared that "the EDTPA confers a blanket immunity on negligence occurring during the pandemic" (Garcia v NYCHH, Index Number 159046/2020 [NY County, July 6, 2022]). Many courts broadly interpreted and applied the EDTPA, offering a "nearly unlimited immunity for health providers for all medical care during the COVID-19 emergency, related or not to the treatment of COVID-19" (Kluska v Montefiore St. Luke's Cornwall, 85 Misc 3d 1275(A) [Orange County Sup Ct 2025], citing Mera v New York City Health and Hosps. Corp., 220 AD3d 668, 670 [2d Dept 2023] [physician's affirmation established immunity where decedent was diagnosed with COVID-19 after arriving at the hospital, was treated for same while in the hospital, and died as a result of COVID-19]; Whitehead v Pine Haven Operating LLC, 222 AD3d 104, 110 [3d Dept 2023] [facility's response to COVID—19 impacted decedent's care]; Martinez v NYC Health and Hosps. Corp., 223 AD3d 731, 732 [2d Dept 2024] [immunity established where decedent was [*5]diagnosed with COVID—19 after arriving at defendant hospital and died from COVID—19]). As noted above, the amendment effective August 3, 2020 limited its applicability to when the "health care services" related to treatment for actual or suspected COVID-19.
However, the interpretation has since narrowed. With the passage of time and the use of the immunity defense against claims of straight negligence apart from COVID-19 treatment and protocols, Courts, and in particular, the First Department, in Holder v Jacob, 231 AD3d 78 (1st Dept 2024), began to focus on whether the movant had established, conclusively, that "the treatment of the individual [was] impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID—19 outbreak" (Holder v Jacob, 231 AD3d at 89 [emphasis added]). Defendant's proof "must conclusively establish the impact on the treatment rendered to plaintiff, and suggestion is not conclusiveness" (Holder v Jacob, 231 AD3d at 88, citing Rovello v Orofino Realty Co., 40 NY2d 633, 636, 357 NE2d 970 [1976]). Such must "conclusively establish that the conditions for its entitlement to immunity under the EDTPA were satisfied" (Gonnelly v Newburgh Operations, LLC, 236 AD3d 866, 868 [2d Dept 2025], citing Damon v Clove Lakes Healthcare and Rehabilitation Ctr., Inc., 228 AD3d 618, 619 [2d Dept 2024][defendant failed to establish that the three requirements for immunity were satisfied]).
Thus, the focus is on the second requirement of PHL § 3082(1)(b):
(b) the act or omission occurs in the course of arranging for or providing health care services and the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives (emphasis added).
At oral argument, this Court expressed concerns about the extent of a claimed impact — whether it was a slight impact or a large impact, as well as whether the impact constituted a two-hour delay or a twelve-hour delay. The answer can be found in Holder v Jacob, 231 AD3d 78, 85 (1st Dept 2024):
Public Health Law §3082 "does not qualify how treatment must be affected — whether positively, negatively, or otherwise — it merely requires that treatment be 'impacted'" Matos v Chiong, 2021 NY Slip Op 32047 [U], [Sup Ct, Bronx County 2021]). It does not require that the plaintiff's treatment be uniquely impacted as compared to other patients (see Crampton v Garnet Health, 73 Misc 3d 543,560 [Sup Ct, Orange County 2021]). It does not identify any particular aspect of, or the materiality of any aspect of, a patient's treatment that must be impacted to warrant a finding that the immunity statute is applicable.[FN3]
Dr. Pallotta has shown that the timing of the surgery was unavoidably impacted by Mr. Beggins' COVID-19 infection. He testified that "[t]here was a specific delay in regard to the COVID diagnosis" (Ex. H, Deposition of Pallotta, page 48 [NYSCEF Doc. 67]["Pallotta Deposition"]). He further notes that the diagnosis "impact[ed] the timing of [the] surgery" as the operating room had to be prepared to receive Mr. Beggins as a COVID-19 patient (Pallotta Deposition pages 48 - 49). While an operating room would typically be held for three hours for a procedure, in this instance, the "plaintiff's COVID-19 positive status resulted in delays in the patient being taken into the OR" beyond the standard three-hour window (Pallotta Affirmation ¶16). Dr. Pallotta estimated the delay to be "less than two hours past the three hour window," and testified that the plaintiff's COVID-19 diagnosis impacted the timing of the surgery (Pallotta Deposition pages 47-48).
Thus, under the circumstances herein, the Court finds that Dr. Pallotta has demonstrated his immunity from suit in regard to his treatment of Mr. Beggins, to the extent that the timeliness of such treatment was impacted by the COVID-19 pandemic. In opposition, plaintiff failed to raise a material issue of fact on this issue.
As recently held by the Second Department in Hyman v Richmond Univ. Med. Ctr., 2025 NY Slip Op 03313, 2025 WL 1572345 [2d Dept June 4, 2025], "the defendant's evidentiary submissions established conclusively that the three requirements for immunity under the EDTPA were met with respect to the alleged malpractice, and, therefore, the plaintiff had no cause of action against it (see Martinez v. NYC Health & Hosps. Corp., 223 AD3d 731, 732 [2d Dept 2024]; Mera v. New York City Health & Hosps. Corp., 220 AD3d at 670, supra)."
Accordingly, so much of the complaint against Dr. Pallotta as is based on the timeliness of suspecting, investigating, diagnosing and treating plaintiff is dismissed. The numerous allegations in the complaint concerning "failing to timely and properly"[FN4]
are dismissed as barred by the immunity statute then in place.
2. Negligent claims in treatment
However, Dr. Pallotta has failed to conclusively demonstrate that "[e]very aspect of the treatment of this COVID-19 patient is inevitably impacted by the health care facility's response to the pandemic" (Memorandum, p. 12 [NYSCEF Doc. 59]) or that "plaintiff's care was inescapably impacted by decisions and activities as a result of the COVID-19 outbreak" (Memorandum, p. 15 [NYSCEF Doc. 59]). Allegations of "negligently and improperly performing and interpreting an MRI of the lumbar spine," "negligently and improperly performing decompression surgery at L3-4," and the like, are not barred by any immunity claim arising from the delay before the [*6]surgery could be performed.
The Court disagrees with the Defendant's claim that "the EDTPA does not require a direct causal link between the provider's response to the pandemic and the patient's alleged injury in order for EDTPA immunity to apply" (Memorandum, p. 14 [NYSCEF Doc. 59]). Normally, proximate cause is an important element of a medical malpractice case (see Belotti v Northern Westchester Hospital, 230 AD3d 461 [2d Dept 2024]; Pichardo v Herrera-Acevedo,77 AD3d 641 [2d Dept 2010]). As stated above, the focus of the statute is on the "treatment of the individual" (see Holder v Jacob, 231 AD3d at 86). 
Importantly, at his deposition Dr. Pallotta could offer no opinion as to how his treatment, apart from the delay in preparing the OR, impacted Mr. Beggins neurological function following the surgical procedure.
Q. [D]o you have an opinion within a reasonable degree of medical certainty, as to whether or not that delay, due to Mr. Beggins' testing positive for COVID, played any role or had any impact on his long term neurological outcome?
A. No, I don't have an opinion.
(see Exhibit H, p. 48).
Q. [D]o you have an opinion within a reasonable degree of medical certainty, whether or not COVID had any impact on this gentleman's long-term neurological function following your surgical procedure?
A. No.
(see Exhibit H, p. 61).
The Court does acknowledge that Dr. Pallotta, in his affirmation, described numerous and pervasive systemic changes to hospital operation and patient care occasioned by the pandemic, much like the doctor's affidavit in Holder, supra. Dr. Pallotta concludes in his affirmation:
Every aspect of plaintiff's care and treatment was unavoidably impacted by my decisions in response to the COVID-19 outbreak and in support of federal and New York State directives to combat this deadly unprecedented pandemic
(Pallotta Affirmation ¶29).
However, the affirmation does not conclusively establish as to the remaining acts or omissions constituting the alleged negligence that the treatment of Mr. Beggins was impacted by the health care facility's or health care professionals' decisions or activities in response to or resulting from the COVID-19 outbreak.
In light of the above, as to the remaining claims in the complaint, Dr. Pallotta did not conclusively establish that the conditions for his entitlement to immunity were satisfied (Gonnelly v Newburgh Operations, LLC, 236 AD3d at 868; Damon v Clove Lakes Healthcare and Rehabilitation Ctr., Inc., 228 AD3d at 619; see also Jackson v BronxCare Health Sys., 236 AD3d 594 [1st Dept. 2025] [only as to claim of ability to provide walking device]; Holder, 231 AD3d at 88). Dr. Pallotta has failed to establish that the remaining alleged departures were the result of an impact from the response to the pandemic. There is no showing of how the EDTPA could be applied to the actual performance of a spinal decompression and a discectomy. The motion to dismiss is denied as to these remaining claims.
While this determination may seem, on the surface, to be contrary to various Second Department holdings set forth above (see Hyman, supra; Lara v S&J Operational, LLC, 237 AD3d 1186 [2d Dept 2025]; Martinez, supra; Mera, supra; see also, Whitehead, supra; Leary-Tucker v NYC Health & Hospital/Kings County Hospital, 86 Misc 3d 1212(A) [Sup Ct, Kings County, June 5, 2025]), the overriding impact, in those cases, involved direct treatment of COVID-19 patients.
3. THE PREP ACT
Dr. Pallotta contends that he is immune from liability under the circumstances because Mr. Beggins' alleged injuries stemmed from the treatment that he received while he had COVID-19. Dr. Pallotta argues that the PREP Act effectively bars the plaintiffs' action.
The declaration by the Secretary of Health and Human Services of a public health emergency on March 10, 2020 due to COVID-19 invoked protections to health care providers under the PREP Act (see Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed Reg 15198-01). This act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure" (42 USC § 247d-6d [a][1]).
"Under the PREP Act, the scope of immunity applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure" (Kluska v Montefiore St. Luke's Cornwall, 227 AD3d 690, 692 [2d Dept 2024]; 42 U.S.C. § 247d-6d[a][2][B]). A "covered countermeasure" is defined as "'any antiviral, drug, biologic, diagnostic, device, or vaccine used to treat, diagnose, cure, prevent, or mitigate COVID-19'" (Kluska v Montefiore St. Luke's Cornwall, 227 AD3d at 692 quoting Solomon v St. Joseph Hosp., 62 F4th 54, 58 [2d Cir 2023]). A qualified person is any licensed healthcare professional who prescribed, administered or dispensed the covered countermeasure (Shapnik v Hebrew Home for Aged at Riverdale, 535 F Supp 3d 301, 305 [SDNY 2021]). The only exception to the protection conferred by the PREP Act is a claim of death or serious injury proximately caused by willful conduct (Leroy v Hume, 554 F Supp 3d 470, 475 [EDNY 2021]). [*7]Should a plaintiff's claim be barred by the Act, he or she may seek compensation for any injury from the Covered Countermeasure Process Fund administered by the HHS Secretary (Shapnik v Hebrew Home for Aged at Riverdale, 535 F Supp 3d at 305).
"State courts addressing immunity defenses under the PREP Act are required to answer only whether the plaintiff's claims fall within the PREP Act's immunity provision . . . [I]f the answer is no,. . . there is no federal law left to apply and the case can proceed under state law. If the answer is yes, the immunity ends the case, and litigants may either file a claim for willful misconduct in the United States District Court for the District of Columbia or seek relief from the compensation fund" (Solomon v St. Joseph Hosp., 62 F4th at 62, 4n [2d Cir 2023]).
While Dr. Pallotta claims "every aspect of the treatment of a COVID-19 patient is necessarily impacted by the greater response to the COVID-19 outbreak" (McCarthy Affirmation ¶6), there is no claim remaining in the complaint that Mr. Beggins was harmed by a countermeasure employed during his stay at SBUH while under the care and treatment of Dr. Pallotta. In fact, no covered countermeasures are expressly set forth. There is no showing of how the remaining claims of negligence in the complaint arose from the use of covered countermeasures, and no showing of a causal relationship. Finally, there is no claim of an improper administration or use of covered countermeasures. 
Since Dr. Pallotta has not shown, prima facie, that plaintiff's remaining claims arise out of or relate to the use or administration of a covered countermeasure, the PREP Act does not bar plaintiff's allegations that are not barred by the EDTPA. Therefore, dismissal is not warranted based upon the PREP Act.
The parties are directed to appear in the Calendar Control Part on July 22, 2025 at 9:30am.
This constitutes the Decision and Order of the court.
DATED: July 10, 2025
THOMAS F. WHELAN, J.S.C.

Footnotes

Footnote 1:Despite the fact that all discovery is complete and that this matter is set for a firm trial date, plaintiff concedes that this motion can be made at this time (see CPLR 3211[e]).

Footnote 2:Dr. Pallotta does not argue that he complied with the standard of care or did not proximately cause Mr. Beggins' alleged injuries. 

Footnote 3:Moreover, although the EDTPA was subsequently repealed, such repeal is not retroactive (Damon v Clove Lakes Healthcare & Rehabilitation Ctr., Inc., 228 AD3d 618, 213 NYS3d 133 [2d Dept 2024]; Hasan v Terrace Acquisitions II, LLC, 224 AD3d 475 [1st Dept 2024]; Whitehead v Pine Haven Operating LLC, 222 AD3d 104 [3d Dept 2023]; Ruth v Elderwood at Amherst, 209 AD3d 1281 [4th Dept 2022]).

Footnote 4:The Court notes that at least 37 allegations of the complaint must be dismissed.