Yearwwood v Richmond Ctr. for Rehabilitation & Specialty Healthcare (2024 NY Slip Op 50168(U))

[*1]

Yearwwood v Richmond Ctr. for Rehabilitation & Specialty Healthcare

2024 NY Slip Op 50168(U)

Decided on February 22, 2024

Supreme Court, Richmond County

Ozzi, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 22, 2024
Supreme Court, Richmond County

Pauline Yearwwood, as ADMINISTRATRIX OF THE ESTATE OF VIBERT YEARWWOOD, Deceased, Plaintiff(s),

against
Richmond Center for Rehabilitation and Specialty Healthcare, Defendants.

Index No. 150289/2023

KRENTSEL & GUZMAN, LLP 
17 Battery Pl., Ste. 604 
New York, NY 10004-1135 
(212) 227-2900 
jpanarella&commat;kglawteam.com
for Plaintiff
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER 
1133 Westchester Ave 
White Plains, NY 10604 
(914) 323-7731 
lori.semlies&commat;wilsonelser.com
for Defendant

Wayne M. Ozzi, J.

The Court marked the following e-filed documents associated with motion sequence 001 fully submitted on November 2, 2023.
E-Filed Document #:
Defendant's Notice of Motion dated September 14, 2023, Affirmation in Support dated September 14, 2023, Memorandum of Law and annexed Exhibits 11-32
Plaintiff's Affirmation in Opposition dated September 22, 2023 and annexed Exhibits 35-51
Defendant's Affirmation in Reply dated October 23, and annexed Exhibit(s) 55-57
Upon the forgoing papers, defendant's motion (No. 001) to dismiss plaintiff's complaint pursuant to CLR 3211(a)(1) and 3211(a)(7) as to plaintiff's cause of action for negligence including gross negligence, violations of the Public Health Law 2801-d, 2803-c and for lack of subject matter jurisdiction is denied. Defendant's motion seeking dismissal of plaintiff's cause of action for wrongful death pursuant to CLR 3211(a)(5) is granted in its entirety as timed barred. 
By way of background, Plaintiff's action is premised upon allegations of violation of Public Health Law section 2801-d, 2803-c; negligence, gross negligence and wrongful death arising from the care and treatment of plaintiff's decedent prior to and during the COVID-19 pandemic. It is alleged that plaintiff's decedent was a resident of defendant's health care facility (nursing home) from January 2017 to his time of death on December 12, 2020 and that prior to and during the outbreak of the global pandemic from Coronavirus, the defendant, inter alia, failed to provide proper infection prevention and control procedures; failed to maintain proper infection prevention and control; failed to safely and properly move, monitor, supervise, assist, and/or treat plaintiff's decedent; and that between June 9, 2017 and June 30, 2021 defendant was cited by government inspectors and regulators 24 times for failing to ensure that an infection prevention and control program was maintained to help prevent the development and transmission of communicable diseases and infections, 
PROCEDURAL HISTORY
Plaintiff commenced the action by filing a Summons and Complaint on February 23, 2023. The parties stipulated to extend defendant's time to answer (NYSCEF Doc. #s 9 & 10). Defendant now moves, pre-answer, to dismiss plaintiff's complaint by asserting that it is immune from liability pursuant to New York's Emergency Disaster Treatment Protection Act (hereinafter referred to as "EDTPA") and the Federal Public Readiness and Emergency Preparedness Act (hereinafter referred to as "PREP Act") and that the PREP Act deprives this court of jurisdiction over the subject matter. Defendant also moves to dismiss the wrongful death cause of action as barred by the statute of limitations.
Plaintiff, in opposition contends that plaintiff has sufficiently stated a cause of action pursuant to Public Health Law 2801(d); plaintiff's wrongful death cause of action is not time barred due to the Covid-19 toll; plaintiff's claims are not subject to dismissal under EDTPA due to the retroactive repeal of said Act and do not fall within Executive Order 202.10; plaintiffs' claims are not encompassed by the PREP Act as plaintiff's claims do not arise from covered countermeasures and that, in any event, New York courts have subject matter jurisdiction over plaintiff's claims. 
Before addressing any issues relating to the application or lack thereof of the EDTPA or PREP Act in the present matter and/or the retroactivity or lack thereof of the repeal of the EDTPA, this Court finds, contrary to defendant's assertion, that it has jurisdiction over the subject matter and therefore may decide defendant's application for dismissal of plaintiff's complaint pursuant to CLR 3211(a)(1); (a)(5) and (a)(7). (Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr, 2021 WL 3549878, aff'd. 2023 WL 2926286).
MOTION TO DISMISS PURSUANT TO CLR 3211(a)(1)
It is well established that to be successful on a motion to dismiss pursuant to CLR 3211(a)(1), it is the movant who bears the burden of proof and must demonstrate that the documentary evidence submitted is "undeniable", unambiguous" resolves all factual issues, as a [*2]matter of law, definitively disposing of plaintiff's claims. (U.S. Bank v Marrero, 221 AD3d 631, [2nd Dept., 2023]; Phoenix Grantor Trust v Exclusive Hospitality, LLC., 172 AD3d 923 [2d Dept., 2019]). Affidavits, affirmations, letters, and emails are not considered to be "documentary evidence" when availing oneself of the provisions of CLR 3211(a)(1). (Phoenix, supra.; Kappa Dev. Corp. v College Point Holdings, LLC. 95 AD3d 1178 [2d Dept. 2012]; Feldshteyn v Brighton Beach 2021 LLC, 153 AD3d 670 [2nd Dept., 2017]; Maursky v Latham, 219 AD3d 473 [2nd Dept., 2023]). In the first instance, it is for the Court to determine whether all factual issues have been conclusively resolved based upon the documentary evidence submitted by the defendant. (CLR §3211(a)(1)).
In the present matter, the defendant submits and relies upon the following documentary evidence:
• an affidavit by Rita Iyoha, the Director of Nursing at defendant's facility;
• portions of some of decedent's medical records from defendant's facility for the calendar year of 2020;
• defendant's Infection Control policies from 2011-2019;
• various memos regarding defendants Covid-19 manuals and policies as well as guidance memos from CMS and NYS DOH regarding Covid-19. The Court cannot consider the affidavit of Rita Ihoya, beyond the purpose of laying laying a foundation for the submission of decedent's medical records as it does not constitute documentary evidence. Nor do any memos/letters (incorrectly stated as manuals) and/or policies regarding Infection Control policies for 2011-2019 constitute documentary evidence for the purposes of a motion to dismiss pursuant to CLR §3211(a)(1)). (Phoenix, supra; Kappa, supra; Feldshteyn, supra).
In reviewing those portions of the medical records of plaintiff's decedent submitted by defendant from January 2020 to December 2020, same reveal plaintiff's decedent tested positive for Covid-19 and subsequently tested negative a few days later in May 2020. The submitted medical records do not reflect that decedent was being treated or diagnosed with Covid-19 at the time of his death or within the seven (7) months preceding his death but rather reflect that plaintiff's decedent was diagnosed with other types of infections, to wit, osteomyelitis, as early as July, 2020, as well as in September and October 2020, "multiple skin breakdowns" in September, 2020; pressure ulcers on various extremities in September, 2020; "chronic C-Diff" (Clostridium difficile) in September, 2020 and sepsis in late September, 2020 which required hospitalization. Upon decedent's return to the defendant's facility, a review of the medical records reveals that decedent continued to exhibit skin breakdowns. 
Comparing these medical records with the allegations of plaintiff's complaint, beyond alleging decedent contracted COVID-19 and died, same also alleges, inter alia; 
• defendant failed to maintain an infection control program before and during the Covid-19 pandemic designed to provide a safe, sanitary and comfortable environment in which residents vulnerable to infection reside and where health care provider[s] work;
• defendant failed to have an infection control program which investigated, controlled and took action to prevent infections in the facility.
• defendant failed to safely and properly move, monitor, supervise, assist and/or treat plaintiff's decedent.
• defendants were cited for improper infection control violations and continued throughout Plaintiff's VIBERT YEARWWOOD's residency and were such that [*3]supervisors, [Administrator] and managing agents should have been aware of them between June 9, 2017, and June 30, 2021; • defendant failed to provide proper infection prevention and control procedures and was cited by federal agencies and regulators 24 times including for failure to ensure that an infection prevention and control program was maintained to help prevent the development and transmission of communicable diseases and infections.
• that defendant owed a duty to patients, including plaintiff's decedent VIBERT YEARWWOOD to protect its patient's rights pursuant to the Public Health Law 20801-d and 2803-c; • Defendant acted in so careless a manner as to show complete disregard for the rights and safety of others;
• Defendant owed a duty to protect the patient from injury and to provide reasonable care under the circumstances.
• Defendant acted or failed to act knowing that their conduct would probably result in injury or damage.
• Defendant acted in so reckless a manner or failed to act in circumstances where an act was clearly required so as to indicate disregard of the consequences of their action;
• Defendant owed a duty to plaintiff's decedent to hire, train, retain, supervise employees and independent contractors, both licensed and unlicensed, so that such employees and independent contractors delivered care and services to Plaintiff's decedent [in] a reasonably safe and beneficial manner.
• defendant had notice of Plaintiff's decedent VIBERT YEARWWOOD's need of appropriate intervention to prevent injury and did not implement appropriate intervention.
• defendant RICHMOND CENTER FOR REHABILITATION AND SPECIALTY HEALTHCARE negligently breached its duties owed to plaintiff's decedent by statute and common law; that as a result of the foregoing acts and/omissions, Plaintiff's decedent VIBERT YEARWWOOD was subject to the negligence of the defendants, causing decedent VIBERT YEARWWOOD to be forced to undergo medical treatment, incur medical expenses, suffer permanent disfigurement, disability, pain and suffering, mental anguish, loss of enjoyment if life, loss of dignity and death.
Based upon the documentary evidence submitted by the defendant, defendant fails to meet its burden of proof to unambiguously or conclusively dispose of all of plaintiff's factual allegations as a matter of law. Defendant's motion to dismiss pursuant to CLR 32111(a)(1) is denied. 
MOTION TO DISMISS PURSUANT TO CLR 3211(a)(5)
Pursuant to CLR 3211(a)(5), a party may move to dismiss upon the grounds that a cause of action cannot be maintained due to the expiration of the Statute of Limitations. Here, defendant contends that plaintiff' cause of action for wrongful death is time barred. The Statute of Limitations for a wrongful death cause of action is two (2) years from the date of death. (EPTL 5-4.1). 
In the present matter, it is undisputed that decedent died on December 12, 2020. It is also undisputed that plaintiff's counsel filed its summons and complaint on February 23, 2023, alleging, inter alia, a cause of action for wrongful death more than two years after decedent's date of date. Contrary to plaintiff's assertions, plaintiff does not get the benefit of any tolling [*4]provisions of the time limitation for commencing, filing, or service of any legal action resulting from any Executive Orders which tolled the limitations to file a civil action. While Governor Cuomo's initial Executive Order and subsequent Orders extending the tolling of time in which to commence a civil action, those Executive Orders expired in November 2020. (See Executive Order 202.67). Decedent died after the expiration of the tolling provision and the applicable statute of limitations for wrongful death action remains two years from the date of death of plaintiff's decedent. Clearly, plaintiff commenced this action when the statute of limitations had already expired and is time barred. While plaintiff correctly contends that pain and suffering on the wrongful death action can be severed and will survive an otherwise time-barred wrongful death action, plaintiff' cause of action for wrongful death does not seek damages for conscious pain and suffering. Defendant's motion to dismiss plaintiff's wrongful death pursuant to CLR 3211(a)(5) is granted in its entirety. 
MOTION TO DISMISS PURSUANT TO CLR 3211(a)(7)
Pursuant to CLR 3211(a)(7), a party may move to dismiss for failure to state a cause of action. It is well established on a motion to dismiss pursuant to this section, the complaint must be given a liberal construction in which the Court will "accept the facts as alleged in the complaint as true" and give the complainant "the benefit of every possible favorable inference" such that the Court is tasked with determining whether the alleged facts in the complaint fit within "any cognizable legal theory". (Maursky, supra.; Grocery Leasing Corp. v 104 16 LLC., 197 AD3d 628 [2d Dept., 2021]. However, where a moving party submits evidentiary documents in support of its motion to dismiss pursuant to CLR 3211(a)(7), the Court may consider such materials and if so considered, is then tasked with determining whether the complainant has a cause of action, not whether the alleged facts in the complaint state a cause of action. (Dolphin Holdings, Ltd. v Gander & White Shipping, Inc. 122 AD3d 901 [2d Dept., 2014]). 
Defendant argues that plaintiff fails to state a cause of action for relief as defendant is immune from suit based upon the EDTPA and PREP ACT and submits the evidentiary materials as noted above in support of its contention. The Court has chosen to consider the documentary evidence submitted by the defendant for dismissal pursuant to CLR 3211(a)(7) and upon consideration finds the documentary evidence fails to establish that plaintiff does not have a cause of action for negligence, including gross negligence and violations of the Public Health Law.
Initially, it must be noted that the purpose of EDTPA, codified by Public Health Law 3080-3082, now repealed, was "to promote public health, safety and welfare of all citizens by broadly protecting the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with Covid-19 under conditions resulting from circumstances associated with the public health emergency." (Public Health 3080). On August 3, 2020, the then Governor of New York signed legislation to amend the broad immunity provisions afforded by the EDTPA and the Public Health Law. This amendment removed and eliminated from the Public Health Law the broad immunity protection for treatment rendered to patient/residents during the Covid-19 pandemic that was not directly related to treatment of a known or suspected case of Covid-19. As of August 3, 2020, for immunity to attach, the treatment rendered must be directly related to the diagnosis and treatment of a confirmed or suspected case of Covid-19. The EDTPA was repealed by the Legislature in April 2021. 
Before turning to the merits of this issue, the Court first must determine whether the repeal of the EDTPA is retroactive. If the repeal is retroactive, then the EDTPA would not apply to this case, and there would be no state law immunity that applies. If it is not applied retroactively, then the EDTPA would apply. When the Legislature passed the EDTPA on April 3, 2020, it plainly expressed its intent that the legislation be applied retroactively, stating that the EDTPA would "take effect immediately and [would] be deemed to have been in full force and effect on or after March 7, 2020" and that it would apply to acts or omissions that occurred on or after the date of the Covid-19 emergency declaration. (L 2020, ch 56, pt. GGG § 2). The August 3, 2020 legislation amending the EDTPA stated that it would take effect immediately and would apply to claims for harm or damages if the act or omission occurred on or after the effective date of the amendment. (L 2020, ch 134, § 3). The April 2021 repeal legislation did not speak to whether it was to be applied retroactively or prospectively.
This issue of whether the repeal is retroactive has not yet been decided by the Second Department. Trial level court decisions have reached the conclusion that repeal was prospective only. (See Messina v. Clove Lakes Health Care & Rehab. Ctr., Inc., 78 Misc 3d 537, 181 N.Y.S.3d 868 (NY Sup. Ct. 2023)). However, the First, Fourth and the Third Departments have analyzed this issue and each have found that the repeal was not retroactive.[FN1]
In Ruth v. Elderwood at Amherst, 209 AD3d 1281 (4th Dept. 2022), the Fourth Department held that the repeal of the EDTPA is not retroactive but should be applied prospectively only. Among other considerations, the Court considered the Legislature's floor debates in the Senate and Assembly and found that these strongly supported the conclusion that the repeal should apply prospectively only, and contained nothing that indicated a clear intent to apply the statute retroactively. 
The Third Department reached the same conclusion in Whitehead v. Pine Haven Operating LLC, 222 AD3d 104 (NY App. Div. 2023). In finding that the repeal was not retroactive, Whitehead considered that the retroactive repeal of the EDTPA "would merely punish healthcare providers for past conduct they cannot change — an objective (that has been) deemed illegitimate as a justification for retroactivity." (Ibid, citing Regina Metro. Co., LLC v. New York State Div. of Hous. & Community Renewal, 35 NY3d at 384). Most recently, on February 13, 2024, the First Department in Hasan v. Terrace Acquisitions II, LLC, No. 1640, 2024 WL 559173 (1st Dept., 2024), affirmed a trial court decision that found that the repeal was to be applied prospectively. Hasan found in part that the legislative history of the repeal did not include the type of clear statement regarding retroactivity that would overcome the presumption of prospective application that applied to the repeal legislation, which the Court found fell within the category of legislation that "impacted substantive rights." (Ibid).
Although the Second Department has not determined this issue, stare decisis requires this Court to adopt the same conclusion as the appellate decisions cited above. Trial courts are required to follow precedents set by the Appellate Division of another Department until the [*5]Court of Appeals or an appeals court from within the trial court's Department announces a contrary result. (see Mountain View Coach Lines, Inc. v. Storms, 102 AD2d 663 [2d Dept. 1984]). Accordingly, this Court finds that the repeal of the EDTPA was not retroactive.
The Court must next analyze whether Defendant has met his burden on this motion of establishing that Plaintiff failed to state a cause of action based on the immunity accorded by the EDTPA. It appears that Plaintiff was hospitalized in September 2020, after the August 2020 amendment, with chronic C-Diff as well as sepsis which required her hospitalization and died in December 2020. These events happened after the passage of the amended EDTPA, while her Covid diagnosis was in May 2020, prior to the amendment. 
Regarding the infections for which Plaintiff was hospitalized, Defendant's argument does not appreciate the significance of the amendment and its new definition of "health care services". The amendment narrowly defined "health care services", compared to the previous definition of health care services in the EDTPA codified by the Public Health Law 3080-3082. This amendment did not "include", but rather limited and changed the definition of health care services solely to those services that relate to diagnosis and treatment of Covid-19 or assessment of care for an individual as it relates to Covid-19 when such individual has a confirmed or suspected case of Covid-19. The amendment completely deleted section c. which included the care and treatment of any other individuals, including those not related to diagnosis or treatment of Covid-19. 
A review of the selected portions of decedent's medical records submitted by defendant's counsel, as noted above, reveals that decedent tested positive for Covid-19 in May 2020 and subsequently tested negative a few days later in May 2020. Said medical records do not reveal that the health care services provided to decedent in the seven months (7) prior to his death were related to the diagnosis or treatment of Covid-19. Rather, said health care services relate to other infectious diseases and conditions. 
Similarly, the affidavit of Rita Iyoha confirms that decedent's medical records reveal that "decedent recovered from Covid-19 and had no symptoms as of May 22, 2020; "did not record a positive test for days, weeks or months preceding his passing", and on the date of decedent's death "there is no indication that he had any signs or symptoms of Covid-19". Beyond those statements relating to the decedent's medical records, any statements in this affidavit that decedent's care and treatment was impacted by the Covid-19 in 2020 do not constitute documentary evidence. Assuming arguendo that it was documentary evidence, said affidavit lacks any personal knowledge and specificity as how decedent's care and treatment for unrelated Covid-symptoms such as osteomyelitis, sepsis, ulcers to decedent's right heel, sacral region and left buttock was impacted by Covid-19. Additionally, said affidavit does not specify the type of care or treatment, if any, rendered to decedent prior to the outbreak of Covid as well as during Covid, particularly as to the other infectious diseases contracted by decedent at defendant's facility in 2020. While said affidavit refers to Covid-19 protocols and procedures in place during the pandemic, it is silent as to any protocols or procedures for other types of infections such as osteomyelitis; C-Diff; pressure ulcers and sepsis,
Nor can the manuals, guidance memos, etc. be considered documentary evidence. The materials submitted by the defendant relate solely to the Covid-19 protocols and lack any specificity as it relates to the care and treatment of decedent's unrelated infections. Defendants' submission of its Infection Control Polices for 2011-2019 simply demonstrates that one existed, and not that these policies and/or procedures were implemented in the care and treatment of [*6]plaintiff's decedent for unrelated Covid-19 infections prior to the outbreak of the coronavirus or during same. Any statements from Ms. Iyoha and/or defense counsel that these policies and/or procedures were employed in the care and treatment of decedent unrelated Covid-19 infections are conclusory.
Here, defendant's own evidentiary material, to wit, decedent's medical records, demonstrate that decedent was not being treated or diagnosed with Covid-19 in the seven (7) months before his death, nor reveal that decedent tested positive for Covid-19 or exhibited any signs or symptoms of Covid-19 during the seven (7) months prior to his death. As such, defendant fails to provide any competent evidence that would afford application EDTPA, as amended and in effect at time of decedent's death to warrant dismissal of plaintiff's cause of action for negligence and violations of the Public Health Law 2801-d and 2803-c,
Defendant also contends that plaintiff fails to allege factual allegations sufficient to plead a cause of action for gross negligence and must be dismissed pursuant to CLR 3211(1)(7). However, as previously noted above, the documentary evidence submitted by defendant does not rise to the level of competent evidence and cannot be considered by the Court. As such, on the issue of gross negligence, this Court must determine whether the plaintiff has plaintiff has stated a cause of action, not whether the plaintiff has a cause of action. 
It is well settled that a "plaintiff may not be penalized for failure to make an evidentiary showing to support a compliant that states a claim on its face". (Dolphin Holdings, Ltd supra.). A complaint claiming gross negligence must contain allegations "that defendants' acts or omissions constituted willful or intentional criminal misconduct, gross negligence or intentional infliction of harm." (Mera v New York City Health and Hospitals Corp. 220 AD3d 668 [2d Dept, 2023]). 
Here, defendant fails to provide any evidence that conclusively disposes of plaintiff's allegations of gross negligence [FN2]
. 
Lastly, contrary to counsel's assertion, plaintiff's complaint does not allege any claim arising from the administration of a covered countermeasure which would afford defendant immunity from suit under the PREP Act. Among the Plaintiff's claims for loss are claims alleging that Defendant failed to implement an effective infection control program and failed to monitor or supervise Plaintiff and failed to act to assist Plaintiff. Accepting the Plaintiff's facts as alleged in the complaint as true and according those facts the benefit of every possible favorable inference, these claims would fall outside the scope of the PREP Act and rendering any immunity provided by it inapplicable. (See Est. of Pierro by Stazzone v. Carmel Richmond Healthcare & Rehab. Ctr., No. 152011/2022, 2023 WL 8104884, at *6 (NY Sup. Ct. Nov. 15, 2023). The PREP Act "does not eliminate state causes of action for non-immunized" claims and does not deprive this Court of subject matter jurisdiction. (Rivera-Zayas, supra.). 
The Court has considered the remaining arguments by the defendant and find them to be unavailing.
Accordingly, it is hereby:
ORDERED that defendant's motion seeking to dismiss plaintiff's complaint pursuant to CLR sections 3211(a)(1) and (a)(7) as to plaintiff's cause of action for negligence, violations of [*7]Public Law and gross negligence is denied, and it is further
ORDERED that defendant's motion for dismiss plaintiff's cause of action for wrongful death pursuant to CLR 321212(a)(5) is granted,
The foregoing constitutes the decision and order of this court.
ENTER:
Dated: February 22, 2024
Hon. Wayne M. Ozzi, J.S.C.

Footnotes

Footnote 1:Although the Second Department has not expressly decided this issue, this Court notes that in the very recent decision of Martinez v. NYC Health and Hosps. Corp, 223 AD3d 731 (2d Dept. 2024), the Second Department, in determining the appeal of a motion filed after the repeal of the EDTPA, found that defendants were immune under the EDTPA,. It reached this conclusion without discussing whether the EDTPA repeal was retroactive or prospective. By implication, this decision appears to have applied the repeal only prospectively — further supporting the decision in this case.

Footnote 2:Plaintiffs' complaint does not plead a separate cause of action for gross negligence, nor is it required to do so, but contains allegations of gross negligence.