McCaffery v White Plains Hosp. Med. Ctr. (2024 NY Slip Op 51379(U))

[*1]

McCaffery v White Plains Hosp. Med. Ctr.

2024 NY Slip Op 51379(U)

Decided on October 7, 2024

Supreme Court, Westchester County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 7, 2024
Supreme Court, Westchester County

Eleanore McCaffery individually, and ELEANORE MCCAFFERY, by her Power of Attorney, THERESA LAROCCA-BADALAMENTE, Plaintiffs,

against
White Plains Hospital Medical Center, JEWISH HOME LIFE CARE SARAH NEUMAN CENTER WESTCHESTER, and THE NEW JEWISH HOME SARAH NEUMAN, Defendants.

Index No. 62102/2022

Behren & Sobel
Roderick James Behren, Esq.
Attorney for plaintiffs

Sheeley LLP
Andrew Thomas Sheeley, Esq.
Attorney for defendant 
White Plains Hospital Medical Center

Robert S. Ondrovic, J.

In an action, inter alia, to recover damages for medical malpractice, the defendant White Plains Hospital Medical Center moves for summary judgment dismissing the amended complaint insofar as asserted against it.
The following papers were considered in connection with the motion:
PAPERS NUMBERED
Notice of Motion, Attorney Affirmation, Affirmation, Expert Affirmation, Statement 
of Material Facts, Memorandum of Law, Exhibits A - O 1 — 21
Affirmation in Opposition, Exhibits 1 - 4, 
Counter Statement of Material Facts 22 — 27
Reply Affirmation, Exhibits A - E 28 — 33
Relevant Factual and Procedural Background
On March 26, 2020, the plaintiff, Eleanore McCaffery (hereinafter the plaintiff), then 88 years old, was admitted to the defendant White Plains Hospital Medical Center (hereinafter WP Hospital), with right leg cellulitis and complaints of pain. It was reported that the plaintiff had fallen several days prior to her admission, was unable to walk, and suffered from multiple conditions including deep vein thrombosis and dementia. A pelvic x-ray showed a possible right acetabular fracture, arthritic changes, and prior left hip pinning.
According to the plaintiff's medical records from WP Hospital, a Braden Scale assessment performed on March 27 noted a score of 17, which initiated the pressure ulcer protocol. It was noted that the plaintiff was chairfast with very limited mobility and met the criteria for an alternating air mattress. The plaintiff's Braden Scale score remained at 17 when she was reassessed on March 28 and 29. On March 29, a skin examination revealed that the plaintiff's bilateral lower extremities had more swelling and the plaintiff was turned and repositioned every 2 hours and as needed. A subsequent assessment on March 30 noted a Braden Scale score of 13, however, later that afternoon it improved to 15. On March 31, and again on April 1, it was noted that the plaintiff still had left lower extremity edema with mild redness and dry, scaly skin. Use of the Sage turning and positioning system was implemented on those dates, as well as on April 2. On April 2, the plaintiff had a Braden Scale score of 14.
That same date, the plaintiff was discharged from WP Hospital and transferred to the defendant The New Jewish Sarah Neuman (hereinafter the Home). The discharge report indicated, among other things, that no surgery was warranted with respect to the right pubic rami fracture and that the plaintiff's cellulitis was resolved. There was no indication of any skin breakdown or impairment.
The plaintiff's medical records from the Home indicated that upon her admission, the plaintiff had a Braden Scale score of 13. A nursing notation entered that same date at 10:42 p.m. indicated that the plaintiff had a Stage 1 ulcer on the sacrum, a right heel ulcer, a left bunion ulcer, a left heel deep tissue injury, and left leg redness with pitting edema. The next day, on April 3, an evaluation showed that the plaintiff had a left heel blister of 6 x 7 cm, right heel erythema of 1 x 1 cm, a sacral skin opening of 3 x 1 x .1 cm, a left bunion erythema of 1 x 1 cm, right ankle erythema of 1 x 1 cm, and lower extremity thick scaly skin.
The plaintiff was examined by a physician on April 4, who observed a left heel deep tissue injury, right heel non-blanchable redness, left bunion redness, and right ankle dry skin. The next wound notation entered on April 14, indicated that the plaintiff's left heel had a suspected deep tissue injury measuring 1 x 1 cm with necrotic tissue and normal warm skin. On April 16, it was noted that the plaintiff had a Stage II sacral wound measuring 1 x 1 x .1 cm with light serous exudate, a Stage I left bunion wound measuring 1 x 1 cm with necrotic eschar, an unstageable left heel ulcer measuring 4 x 4 cm with necrotic tissue (eschar), a suspected right heel deep tissue injury measuring 2 x .3 cm, and a left leg vascular ulcer with necrotic tissue (eschar). By May 14, the left heel ulcer was described as a blackish deep tissue injury and measured 4 x 5 cm. 
On June 9, the plaintiff was discharged from the Home. Between June 30 and January 5, 2021, the plaintiff received wound care for her left heel pressure ulcer at White Plains Hospital — [*2]Wound Care Center.
The instant action
In July 2022, the plaintiff and Theresa LaRocca-Badalamente, by power of attorney (hereinafter the POA), commenced this action against, among others, WP Hospital to recover damages for medical malpractice, alleging that WP Hospital was negligent in failing to properly prevent and treat the plaintiff's pressure ulcers and bed sores during the period of time the plaintiff was a patient at its facility.
On September 7, 2023, the Court (Hon. Hal Greenwald, J.S.C.), granted the Home's motion to dismiss the action insofar as asserted against it on the ground that it was immune from liability under the Emergency or Disaster Treatment Protection Act (Public Health Law former art 30-D, §§ 3080-3082, repealed by L 2021, ch 96, § 1; hereinafter EDTPA).
Following the completion of discovery, WP Hospital moved for summary judgment dismissing the amended complaint insofar as asserted against it.
WP Hospital's motion
In a memorandum of law and supporting affirmation, WP Hospital's attorney argued that WP Hospital was immune from liability under the EDTPA and that none of the exceptions to the immunity provisions of the EDTPA apply. He also invoked Executive Order 202.10 as an independent basis for immunity. WP Hospital's attorney asserted that, in any event, WP Hospital demonstrated its entitlement to judgment as a matter of law through the submission of, among other things, the affirmation of its expert, who averred, based on his review of the plaintiff's medical records and the deposition testimony of the plaintiff, the POA, and a physician's assistant employed by WP Hospital, that WP Hospital's treatment of the plaintiff was within the appropriate standard of medical care.
In his affirmation, WP Hospital's expert internist and geriatrician, Dr. Cameron Hernandez, opined, with respect to the "plaintiff's minimally displaced right pubic rami fracture . . . that the [WP] Hospital physicians appropriately chose a treatment plan that did not involve surgical intervention" and made "numerous attempts to mobilize plaintiff, which would both advance her recovery from the pelvic fracture and reduce pressure."[FN1]
He opined that "the [WP] Hospital staff properly and timely evaluated plaintiff for the risk of skin breakdown . . . as early as 3/27/20" and "timely implemented skin integrity preventative measures with the use of turning and positioning to offload pressure, the use of a Sage turning and positioning device and an alternating air mattress."[FN2]
Dr. Hernandez concluded that "the instances and documentation of turning and positioning, pressure offloading and physical examinations of plaintiff by [WP] Hospital met the hospital standard of care in general and greatly exceeded the standard of care and expectations during the Covid-19 period of late March 2020 and early April 2020."[FN3]

After noting that "the [WP] Hospital medical records do not reflect the development of [*3]any pressure related injuries during the admission from 3/26/20 to 4/2/20," Dr. Hernandez opined that the "plaintiff's development of skin breakdowns, including a left foot pressure injury, occurred following discharge from [WP] Hospital."[FN4]
He asserted that "documentation of a skin breakdown at the subsequent treating facility, The New Jewish Home, does not establish plaintiff received unsatisfactory care or inappropriate preventative skin measures at [WP] Hospital" and "the examination of a left heel DTI by nursing with no associated measurements at The New Jewish Home, ascribed to 4/2/20 (date of admission) was an error in assessment based on subsequent notes of examination of the left heel."[FN5]
Dr. Hernandez opined that "the reliability of the examination of a left heel blister on 4/3/20, tantamount to a Stage II pressure injury, was accurate in light of the provider entering a specific measurement of the wound" and "that the injury developed between the time of plaintiff's discharge from [WP] Hospital on 4/2/20 at 2:13 p.m. and the time of the examination by a nurse practitioner at The New Jewish Home on 4/3/20."[FN6]
He asserted that "[WP] Hospital's use of Braden Scale skin evaluations for risk of skin breakdown, coupled with the implementation of all reasonable and practical preventative skin interventions with turning and positioning and an alternating air mattress, confirms the development of skin breakdowns for plaintiff was unavoidable."[FN7]

WP Hospital also submitted the affirmation of Kerri El-Sabrout, a registered nurse and board certified family nurse practitioner and nurse executive, who averred that she has been employed by WP Hospital since 2015 and at the time of the plaintiff's admission, held the role of senior director of nursing. She emphasized that the plaintiff was a patient at WP Hospital at the height of the COVID-19 pandemic and when WP Hospital "was faced with the inability to consistently chart a patient['] s care, the redeployment of staff, the increase in patient volume, the increase of critically ill patients, the increase in time devoted to tasks unrelated to patient care, and the inability to perform in-person examinations."[FN8]

El-Sabrout asserted that "[a]lthough normal hospital protocol for wound care injury and management of patients at a high risk for developing pressure ulcers was maintained, it became difficult to effectively track care being rendered."[FN9]
El-Sabrout acknowledged that there was little documentation of when the plaintiff was turned and repositioned and that some of the plaintiff's examinations could not be completed in-person. She explained that "[u]nder the conditions posed by COVID-19, nurses often had to rely on communication with one another and with the patient to determine when the next repositioning was due, and did their best to follow the [*4]protocol as closely as possible."[FN10]
El-Sabrout highlighted that the plaintiff was 88 years-old during her admission and there was a "real fear that if she contracted COVID-19, she might not recover."[FN11]
She maintained that WP Hospital "was doing its best to deal with the COVID-19 crisis and ensuing chaos" and "[t]his constellation of issues without question impacted the care [the plaintiff] received, despite diligent efforts by [WP] Hospital staff."[FN12]

The plaintiff's opposition
In an affirmation in opposition, the plaintiff's attorney emphasized that the plaintiff's discharge report from WP Hospital made no mention whatsoever of any skin breakdown or impairment. He asserted that the plaintiff was transferred directly to the Home and, upon her admission, the plaintiff had readily observable skin ulcerations, decubitis ulcers, and bed sores, which were documented by the Home to have been acquired at WP Hospital. The plaintiff's attorney noted that the "Nursing Admission Note" and "Admitting Diagnosis" for the plaintiff, as reflected in her medical records from the Home, was pressure induced deep tissue damage of left heel; pressure ulcer of right heel, Stage 1; pressure ulcer of sacral region, Stage 1; and pressure ulcer of other site, Stage 1.[FN13]

The plaintiff's attorney argued that WP Hospital's failure to diagnose, examine, and treat the plaintiff for these conditions constituted, inter alia, medical malpractice and gross negligence. He contended that WP Hospital is not entitled to immunity from liability under the EDTPA and Executive Order 202.10 because it failed to demonstrate as a matter of law that the treatment of the plaintiff was impacted by its decisions or activities in response to or as a result of the COVID-19 outbreak. The plaintiff's attorney emphasized that according to Dr. Hernandez, WP Hospital's treatment of the plaintiff, which included "careful and comprehensive examinations" at least once daily, met the standard of care and the plaintiff's development of skin breakdowns occurred following her discharge from WP Hospital.[FN14]
He further argued that Dr. Hernandez's opinion that the plaintiff developed pressure ulcers at the Home on April 3, the day after her discharge from WP Hospital, is implausible. The plaintiff's attorney also noted that acts of gross negligence are excluded from protection under the EDTPA.
In opposition to WP Hospital's motion, the plaintiff also submitted the affidavit of Mary Ann Harrington, a registered professional nurse and legal nurse consultant, who averred that the plaintiff was at a high risk for developing pressure ulcers due to comorbid conditions including, but not limited to, low Albium levels, low Braden Scale score, and cellulitis. She opined that WP Hospital failed to properly assess and evaluate the plaintiff's risk for skin breakdown and failed [*5]to identify her injuries prior to her discharge. Harrington emphasized that there is no indication from WP Hospital's records that a wound care specialist was consulted during the plaintiff's stay or that the plaintiff received any treatment for the subject skin lesions. She also asserted that WP Hospital failed to properly manage the plaintiff's malnutrition, which is a common reason for the development of pressure ulcers. Harrington noted that no supplements were ordered and no dietician was consulted. She maintained that WP Hospital failed to render adequate care to the plaintiff, which resulted in significant tissue damage and required a debridement procedure of the left heel ulcer.
WP Hospital's reply
In a reply affirmation, WP Hospital's attorney argued that the plaintiff failed to raise a triable issue of fact in opposition to WP Hospital's prima facie showing that they are entitled to immunity under the EDTPA and Executive Order 202.10. He contended that even though the plaintiff underwent daily skin examinations, her care was still impacted by WP Hospital's response to the COVID-19 pandemic. He emphasized that WP Hospital provided specific examples of ways that the plaintiff's care was impacted, including the ability to accurately track and record the plaintiff's condition, that her case was discussed telephonically on April 1st by the hospitalist and general surgeon, and the requirements related to personal protective equipment (hereinafter PPE) led to less time spent with patients, including the plaintiff.
WP Hospital's attorney further argued that the plaintiff failed to identify any conduct by WP Hospital that rises to the level of gross negligence. He added that Harrington, who according to her curriculum vitae has not worked in a hospital setting since 2012, failed to demonstrate any first-hand knowledge or expertise regarding the impact that COVID-19 had on the care rendered by healthcare facilities like WP Hospital during the pandemic. WP Hospital's attorney noted that there is no indication that Harrington even worked in healthcare or with patients during the COVID-19 pandemic. He argued that the absence of documentation of any skin care administered to the plaintiff is not proof of negligence given that ordinary documentation requirements by health care providers were suspended in March and April 2020 pursuant to Executive Order 202.10. 
WP Hospital's attorney contended that the affidavit of Harrington, a registered nurse, was insufficient to raise a triable issue of fact on the issue of whether any alleged departure by WP from acceptable standards of care was a substantial factor in causing the plaintiff's injuries. He emphasized that it was the opinion of Dr Hernandez that the plaintiff's ulcers were inevitable given her age and health conditions and, since Harrington is not a medical doctor, she lacks the qualifications to render a medical opinion as to the relevant standard of care and whether WP Hospital deviated from such standard.
ANALYSIS
The EDTPA and Executive Order 202.10
"[T]he EDTPA initially provided, with certain exceptions, that a health care facility 'shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services' as long as three requirements were met: the services were arranged for or provided [*6]pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law, the act or omission was impacted by decisions or activities that were in response to or as a result of the COVID-19 outbreak and in support of the State's directives, and the services were arranged or provided in good faith" (Damon v Clove Lakes Healthcare and Rehabilitation Ctr., Inc., 228 AD3d 618, 619 [2d Dept 2024], quoting Public Health Law former § 3082[1]).
EDTPA's exceptions for "gross negligence, reckless misconduct, or intentional infliction of harm by the health care facility" (Public Health Law former § 3082[2]), are inapplicable to the facts of this case. Contrary to the plaintiff's contention, the allegations in the amended complaint and the evidence submitted in support of and in opposition to WP Hospital's motion do not give rise to a cause of action sounding in gross negligence (see Martinez v NYC Health and Hospitals Corp., 223 AD3d 731, 732-733 [2d Dept 2024]; Whitehead v Pine Haven Operating LLC, 222 AD3d 104, 110 [3d Dept 2023]; Mera v New York City Health and Hospitals Corp., 220 AD3d 668, 669 [2d Dept 2023]). In particular, the plaintiff's medical records from WP Hospital failed to demonstrate that WP Hospital's conduct rose to the level of "intentional wrongdoing or evince[d] a reckless indifference to the rights of others" Skywest, Inc. v Ground Handling, Inc., 150 AD3d 922, 923 [2d Dept 2017] [internal quotation marks omitted]), or that it "fail[ed] to exercise even slight care" (Seti v Carnell Associates, Inc., 218 AD3d 509, 511 [2d Dept 2023] [internal quotation marks omitted]).
Nevertheless, the record failed to demonstrate, conclusively, that WP Hospital's treatment of the plaintiff was impacted by its decisions or activities in response to or as a result of the COVID-19 outbreak such that it is entitled to immunity from liability for the acts and omissions underlying the plaintiff's claims (see Holder v Jacob, — AD3d —, 216 NYS3d 134, 143 [1st Dept 2024]; Damon v Clove Lakes Healthcare and Rehabilitation Ctr., Inc., 228 AD3d 618, 619 [2d Dept 2024]; Cianflone v Carmel Richmond Nursing Home, Inc., 83 Misc 3d 1282[A], 2024 NY Slip Op 51144[U] [Sup Ct, Richmond Co. 2024]; Townsend v Penus, 2021 NY Slip Op 32375[U] [Sup Ct, Bronx County 2021]). Although El-Sabrout described the myriad of ways that the Covid-19 pandemic impacted the operation of WP Hospital including, inter alia, chart documentation, staffing shortages, increase of critically ill patients, protocols related to PPE, and the ability to perform in-person examinations, she concluded that "normal hospital protocol for wound care injury and management of patients at a high risk for developing pressure ulcers was maintained."[FN15]

Dr. Hernandez similarly opined that WP Hospital "timely implemented skin integrity preventative measures with the use of turning and positioning to offload pressure, the use of a Sage turning and positioning device and an alternating air mattress" and concluded that "the instances and documentation of turning and positioning, pressure offloading and physical examinations of plaintiff by [WP] Hospital met the hospital standard of care in general and greatly exceeded the standard of care and expectations during the Covid-19 period of late March 2020 and early April 2020."[FN16]

Although Public Health Law § 3802 "does not qualify how treatment must be affected — whether positively, negatively, or otherwise — it merely requires that treatment be impacted" [*7](Matos v Chiong, 2021 NY Slip Op. 32047[U], 1 [Sup Ct, Bronx County 2021]), here, WP Hospital failed to establish, conclusively, through the affirmations of El-Sabrout and Dr. Hernandez that the treatment of the plaintiff was impacted.
Accordingly, WP Hospital is not entitled to immunity from liability for the acts and omissions underlying the plaintiff's claims under EDTPA. For this same reason, WP Hospital is not entitled to immunity under Executive Order 202.10 (see Holder v Jacob, — AD3d —, 216 NYS3d 134, 143 [1st Dept 2024]).
Medical malpractice
On a motion for summary judgment dismissing a medical malpractice cause of action, a defendant "has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (J.P. v. Patel, 195 AD3d 852, 853 [2d Dept 2021] [internal quotation marks omitted]; see Martinez v. Orange Regional Med. Ctr., 203 AD3d 910, 912 [2d Dept 2021]). "In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars" (Martinez v. Orange Regional Med. Ctr., 203 AD3d at 912 [internal quotation marks omitted]). If the defendant meets this burden, the plaintiff, in opposition, "must demonstrate the existence of a triable issue of fact as to the elements on which the defendant has met his or her initial burden" (Bowe v. Brooklyn United Methodist Church Home, 150 AD3d 1067, 1068 [2d Dept 2017]), including by "rebut[ting] the specific assertions of the defendant's expert" (Barnaman v. Bishop Hucles Episcopal Nursing Home, 213 AD3d 896, 899 [2d Dept 2023]).
Here, WP Hospital established, prima facie, its entitlement to judgment as a matter of law dismissing the medical malpractice cause of action through the affirmation of Dr. Hernandez, an expert in internal medicine and geriatric medicine. Dr. Hernandez opined, within a reasonable degree of medical certainty, that WP Hospital did not depart from accepted standards of medical practice with respect to its treatment of the plaintiff and the development of pressure ulcers was unavoidable due to her medical condition and comorbidities (see Campbell v Ditmas Park Rehabilitation & Care Center, LLC, 225 AD3d 835, 837 [2d Dept 2024]; Vargas v St. Barnabas Hospital, 168 AD3d 596, 596 [1st Dept 2019]; Novick v S. Nassau Communities Hosp., 136 AD3d 999, 1001 [2d Dept 2016]).
More specifically, Dr. Hernandez opined, inter alia, that WP Hospital "properly and timely evaluated plaintiff for the risk of skin breakdown with Braden Scale scoring as early as 3/27/20" and "appropriately continued the evaluations of plaintiff's risk of skin breakdown with the consistent use of the Braden Scale scoring system."[FN17]
He noted that the plaintiff's medical records demonstrate that she "was seen and examined by a provider at least once daily with respect to her left lower extremity cellulitis."[FN18]
Dr. Hernandez concluded that "[WP] Hospital's use of Braden Scale skin evaluations for risk of skin breakdown, coupled with the implementation of all reasonable and practical preventative skin interventions with turning and [*8]positioning and an alternating air mattress, confirms the development of skin breakdowns for plaintiff was unavoidable."[FN19]
Dr. Hernandez noted that the then 88 year-old plaintiff had a history of deep vein thrombosis and chronic cellulitis in her lower extremities, and a possible right acetabular fracture and prior left hip pinning. He concluded, based on WP Hospital's medical records, that the development of pressure ulcers occurred following the plaintiff's discharge from WP Hospital and is not indicative of unsatisfactory care at WP Hospital. 
In opposition, the plaintiff failed to raise a triable issue of fact through the submission of Harrington's affidavit. Harrington, who is a registered nurse and legal nurse consultant, is not a medical doctor and lacks the qualifications to render a medical opinion as to the relevant standard of care, whether WP Hospital deviated from such standard, and whether any deviation was a proximate cause of the injuries (see Boltyansky v New York Community Hospital, 175 AD3d 1478, 1479 [2d Dept 2019]; Novick v S. Nassau Communities Hosp., 136 AD3d 999, 1001 [2d Dept 2016]; Zak v Brookhaven Memorial Hosp. Medical Center, 54 AD3d 852, 853 [2d Dept 2008]; Elliot v Long Island Home, Ltd., 12 AD3d 481, 482 [2d Dept 2004]; c.f. Cerrone v North Shore-Long Island Jewish Health System, Inc., 197 AD3d 449, 451 [2d Dept 2021]). Although Harrington averred that she has "expertise in reviewing medical/nursing records" based on her career experience,[FN20]
there is no specific reference in her curriculum vitae that she has any familiarity with the standards of accepted medical practice related to the prevention and treatment of pressure ulcers (see Vargas v St. Barnabas Hospital, 168 AD3d 596, 597 [1st Dept 2019] [expert failed to establish that he possessed qualifications to opine on formation of pressure ulcers]; c.f. Cummings v Brooklyn Hosp. Center, 147 AD3d 902, 903-904 [2d Dept 2017]. In addition, Harrington failed to specifically address Dr. Hernandez's conclusion that the development of pressure ulcers was unavoidable due to the plaintiff's comorbid conditions. 
Accordingly, that branch of WP Hospital's motion which was for summary judgment dismissing the cause of action to recover damages for medical malpractice is granted.
Negligence and gross negligence
"'The critical question in determining whether an action sounds in medical malpractice or simple negligence is the nature of the duty to the plaintiff which the defendant is alleged to have breached'" (Moore v St. James Health Care Center, LLC, 141 AD3d 701, 702 [2d Dept 2016], quoting Halas v Parkway Hosp., 158 AD2d 516, 516 [2d Dept 1990]; see Rabinovich v Maimonides Medical Center, 179 AD3d 88, 92 [2d Dept 2019]). "'The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of the facts'" (Jeter v. New York Presbyt. Hosp., 172 AD3d 1338, 1339 [2d Dept. 2019], quoting Miller v Albany Med. Ctr. Hosp., 95 AD2d 977, 978 [3d Dept 1983]).
Here, the plaintiff's allegations bear a substantial relationship to the rendition of medical [*9]treatment and implicate issues involving professional medical skill and judgment. Thus, the action sounds in medical malpractice and not ordinary negligence (see Losak v St. James Rehabilitation & Healthcare Center, 199 AD3d 671, 671 [2d Dept 2021]; Jeter v. New York Presbyt. Hosp., 172 AD3d at 1339-1340; Caso v St. Francis Hosp., 34 AD3d 714, 715 [2d Dept 2006]; Fox v White Plains Medical Center, 125 AD2d 538, 538-539 [2d Dept 1986]). Furthermore, as stated above, the record does not support the plaintiff's contention that WP Hospital's conduct "could be viewed as so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of others" (Vissichelli v Glen-Haven Residential Health Care Facility, Inc., 136 AD3d 1021, 1023 [2d Dept 2016]; see Anzolone v Long Island Care Center, Inc., 26 AD3d 449, 450-451 [2d Dept 2006]).
Accordingly, those branches of WP Hospital's motion which were for summary judgment dismissing the causes of action to recover damages for negligence and gross negligence are granted.
Furthermore, since Public Health Law § 2801-d only applies to nursing homes, that branch of WP Hospital's motion which was to dismiss that cause of action is granted (see Novick v South Nassau Communities Hosp., 136 AD3d 999, 1001 [2d Dept 2016]). Finally, given the absence of any allegations sufficient to sustain a cause of action to recover damages for breach of contract and the amended complaint merely pleads legal conclusions, that branch of WP Hospital's motion which was to dismiss that cause of action is also granted (see Brice v Westchester Community Health Plan, 143 AD2d 170, 170 [2d Dept 1988]).
The plaintiff's remaining contentions have been considered by the Court and do not warrant a contrary result.
Accordingly, it is hereby
ORDERED that WP Hospital's motion for summary judgment dismissing the amended complaint insofar as asserted against it is granted; and it is further,
ORDERED that within 10 days of receipt of this decision and order via NYSCEF, counsel for WP Hospital shall serve a copy thereof, with notice of entry, by first class mail upon the plaintiff and the POA, and upload to NYSCEF proof of service.
The foregoing constitutes the Decision and Order of this Court.
Dated: October 7, 2024
White Plains, NY
E N T E R,
HON. ROBERT S. ONDROVIC, J.S.C.

Footnotes

Footnote 1:NYSCEF Doc No 117 at ¶ 33

Footnote 2:id. at ¶ 36

Footnote 3:id. at ¶ 37

Footnote 4:id. at ¶ 39

Footnote 5:id. at ¶¶ 39-40

Footnote 6:id. at ¶ 40 

Footnote 7:id. at ¶ 43

Footnote 8:NYSCEF Doc No 116 at ¶ 29

Footnote 9:id. at ¶ 24

Footnote 10:id. at ¶ 25 

Footnote 11:id. at ¶ 27

Footnote 12:id. at ¶ 29

Footnote 13:NYSCEF Doc No 134 at p 45 and 201

Footnote 14:NYSCEF Doc No 117 at ¶ 17

Footnote 15:NYSCEF Doc No 116 at ¶ 24

Footnote 16:NYSCEF Doc No 117 at ¶¶ 36-37

Footnote 17:id. at ¶ 36

Footnote 18:id. at ¶ 37

Footnote 19:id. at ¶ 43

Footnote 20:NYSCEF Doc No 147 at ¶ 4