Silva-Rios v New York Presbyt. Columbia Med. Ctr. (2026 NY Slip Op 00481)

Silva-Rios v New York Presbyt. Columbia Med. Ctr.

2026 NY Slip Op 00481

Decided on February 03, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 03, 2026

Before: Manzanet-Daniels, J.P., Kapnick, Michael, Hagler, JJ. 

Index No. 806332/21|Appeal No. 5577|Case No. 2024-04589|

[*1]Yadira Silva-Rios, Plaintiff-Appellant,
vNew York Presbyterian Columbia Medical Center, Defendant-Respondent.

Horn Appellate Group, Brooklyn (Scott T. Horn of counsel), for appellant.
Martin Clearwater & Bell LLP, New York (Barbara D. Goldberg of counsel), for respondent.

Order, Supreme Court, Bronx County (Alicia Gerez, J.), entered on or about July 9, 2024, which granted defendant's motion to dismiss the complaint, unanimously affirmed, without costs.
In this medical malpractice action, plaintiff alleges that she developed pressure ulcers while she was being treated for Covid-19 at defendant hospital between March 26, 2020 and July 24, 2020, when she was 47 years old. It is undisputed that plaintiff was sedated and placed on a medical ventilator upon admission to the hospital, and that she spent most of her stay on a ventilator in the hospital's cardiac care unit.
This action was properly dismissed under the immunity provision of New York's Emergency Disaster Treatment Protection Act (the EDTPA). Although plaintiff asserted in her pleadings that the EDTPA does not apply because defendant acted recklessly or with gross negligence, she has abandoned that argument on appeal (see Public Health Law § 3082[2]). Plaintiff also does not dispute that two of the conditions necessary for application of the EDTPA are satisfied, challenging only defendant's showing that "the treatment of the individual [was] impacted by the health care facility's . . . decisions or activities in response to or as a result of the COVID-19 outbreak" (Public Health Law § 3082[1][a]-[c]).
The relevant issue at this stage is that to whatever extent defendant departed from the standard of care with respect to wound prevention and care in plaintiff's particular case, its reason for doing so was pandemic-related. Defendant's evidence included (1) plaintiff's medical records, (2) an affidavit from a registered nurse and certified wound ostomy and continence nurse employed by defendant, Lisa Cullinan, RN, WOCN, who personally attended to plaintiff's care, (3) an affidavit from defendant's Medical Director of Respiratory Care, Steven Miller, MD, and (4) an expert affirmation from a licensed physician, board-certified in internal and geriatric medicine, Gisele P. Wolf-Klein, MD, FACP. This evidence demonstrates that pandemic-related overcapacity, staffing, supply shortages, and guidelines with respect to personal protective equipment had a clear impact on wound prevention and treatment practices, including frequency of turning and repositioning at the hospital's cardiac care unit, and would have affected plaintiff.
Particularly, Nurse Cullinan averred that she personally attended to Covid-19 patients, including plaintiff, and that she was familiar with the treatment and prevention of pressure injuries at the hospital during this time. She explained that the hospital had an "unprecedented influx of acutely ill Covid-19 patients," almost all of whom were on ventilators, and that there were staff shortages that resulted in decreased time with individual patients, which impacted the nursing staff's ability to turn and reposition patients in accordance with the usual protocol. Dr. Wolf-Klein further opined that plaintiff's treatment for "severe COVID-19 . . . had a direct correlation with plaintiff's development of pressure ulcers," and that her state of deep sedation resulted in limited mobility and the deterioration of her skin. Dr. Wolf-Klein also explained that each change in position would increase the risk of dislodgement of plaintiff's ventilator tube, which potentially could result in brain damage or death.
Plaintiff's reliance on Jackson v BronxCare Health Sys. (236 AD3d 594, 595-596 [1st Dept 2025]) and Holder v Jacob (231 AD3d 78, 88-89 [1st Dept 2024]) is misplaced. Unlike in those cases, plaintiff sustained injuries and complications that were directly tied to her hospitalization for Covid-19, with her intubated state making it difficult to move her safely. This is therefore not a situation where plaintiff might be placed in the position of "having to accept [defendant's] word on potentially dispositive issues" (Jackson, 236 AD3d 594 at 596). Based on these facts, the evidence submitted was sufficient to show that the care provided to plaintiff was performed in good faith and that defendant did not depart from the then-existing standards of practice.
In view of our disposition, we need not reach the parties' arguments with respect to the federal Public Readiness and Emergency Preparedness Act.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 3, 2026