Estate of Middleton v CLR Troy LLC (2026 NY Slip Op 01826)

Estate of Middleton v CLR Troy LLC

2026 NY Slip Op 01826

Decided on March 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 26, 2026

CV-24-1381
[*1]Estate of Willie Middleton, by the Proposed Administrator, Barry J. Warren, Respondent,
vCLR Troy LLC, Doing Business as Troy Center for Rehabilitation and Nursing, Appellant, et al., Defendants.

Calendar Date:January 9, 2026

Before:Clark, J.P., Pritzker, McShan, Powers and Corcoran, JJ.

Wilson Elser Moskowitz Edelman & Dicker LLP, Albany (Steven V. DeBraccio of counsel), for appellant.
Napoli Shkolnik PLLC, Melville (Joseph L. Ciaccio of counsel), for respondent.

Powers, J.
Appeal from an order of the Supreme Court (Richard McNally Jr., J.), entered August 12, 2024 in Rensselaer County, which denied a motion by defendant CLR Troy LLC to dismiss the complaint against it.
Beginning in 2004, Willie Middleton (hereinafter decedent) resided at Troy Center for Rehabilitation and Nursing, a nursing home facility owned and operated by defendant CLR Troy LLC (hereinafter defendant) and located in the City of Troy, Rensselaer County. Decedent was transferred from the nursing home to Albany Medical Center on July 24, 2020, where he died from acute hypoxic respiratory failure due to COVID-19 in early August 2020. Plaintiff — decedent's son and the proposed administrator of his estate — commenced this nursing home malpractice action.[FN1] Plaintiff alleged that defendant (1) violated Public Health Law §§ 2801-d and 2803-c, (2) was negligent in its care of decedent prior to the COVID-19 pandemic, (3) was negligent in its care of decedent during the COVID-19 pandemic, resulting in his death, (4) was negligent per se and (5) was grossly negligent. Plaintiff further asserted various causes of action for pain and suffering and wrongful death. Defendant moved to dismiss the complaint against it arguing that, among other things, it was entitled to immunity under the Emergency or Disaster Treatment Protection Act (see Public Health Law former art 30-D, §§ 3080-3082, repealed by L 2021, ch 96, § 1 [hereinafter the EDTPA]) and provided extensive documentary proof in support. Supreme Court denied the motion, finding, pertinent to this appeal, that defendant did not establish as a matter of law that it was immune from suit under the EDTPA. Defendant appeals.
"When presented with a motion to dismiss under CPLR 3211, this Court must accept the facts alleged in the complaint as true and accord the nonmoving party the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory" (Colt v Nathan Littauer Hosp., 236 AD3d 1216, 1217 [3d Dept 2025] [internal quotation marks, brackets and citations omitted], lv denied 44 NY3d 903 [2025]). "[W]here the movant provides evidence extrinsic to the complaint in support of the [CPLR 3211 (a) (7)] motion, a court need not assume the truthfulness of the pleaded allegations. Instead, the criterion is whether the proponent of the pleading actually has a cause of action, not whether he or she has properly stated one" (Whitehead v Pine Haven Operating LLC, 222 AD3d 104, 109 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Costiera v MMR Care Corp., 244 AD3d 1180, 1181 [2d Dept 2025]; Byington v North Sea Assoc., LLC, 244 AD3d 1177, 1178 [2d Dept 2025]). "[T]he plaintiff no longer can rely only on the unsupported factual allegations of the pleading, but must submit evidence demonstrating the existence of a cause of action" (Whitehead v Pine Haven Operating LLC, 222 AD3d at 109-110 [internal quotation marks and citation [*2]omitted]; see Hyman v Richmond Univ. Med. Ctr., 239 AD3d 617, 619 [2d Dept 2025]).
Initially, defendant contends that Supreme Court erred in concluding that it had not established immunity from suit pursuant to the EDTPA and, collaterally, plaintiff failed to allege sufficient facts in support of its claims for gross negligence and pre-COVID-19 negligence — the only causes of action that would survive EDTPA immunity.
As previously described in more detail in Whitehead v Pine Haven Operating LLC (222 AD3d at 107), the EDTPA provided that "any health care facility . . . shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services, if: (a) the health care facility . . . is arranging for or providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law; (b) the act or omission occurs in the course of arranging for or providing health care services and the treatment of the individual is impacted by the health care facility's . . . decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and (c) the health care facility . . . is arranging for or providing health care services in good faith" (Public Health Law former § 3082 [1]).[FN2] At the relevant time, the EDTPA defined " 'health care services' " as "services provided by a health care facility . . . that relate to: (a) the diagnosis, prevention, or treatment of COVID-19; (b) the assessment or care of an individual with a confirmed or suspected case of COVID-19; or (c) the care of any other individual who presents at a health care facility . . . during the period of the COVID-19 emergency declaration" (Public Health Law former § 3081 [5]). A health care facility's immunity under the EDTPA does not apply to acts or omissions constituting gross negligence (see Public Health Law former § 3082 [2]).[FN3]
In support of its motion, defendant supplied an affirmation from a nursing supervisor employed at the nursing home, in which the nurse asserted that she was familiar with defendant's COVID-19 policies and was involved in its response thereto. She avowed that defendant followed all governmental regulations as early as February 2020 and amended its policies as government directives evolved. The nurse recalled that defendant implemented a countermeasure plan based upon guidance from the World Health Organization, the Centers for Disease Control and Prevention as well as the New York State Department of Health. Under defendant's policy, those residents with suspected or confirmed cases of COVID-19 were transferred to isolation rooms, and employees providing direct care for such residents were instructed to wear appropriate personal protective equipment (hereinafter PPE). Defendant screened vendors making deliveries for symptoms of COVID-19, restricted [*3]visitation and offered alternative forms of communication to residents. Defendant updated its policy in May 2020 and then again in June 2020 to incorporate newly released directives concerning the use of face coverings, isolation and use of PPE for residents with a suspected COVID-19 infection, as well as routine testing for all nursing home personnel. In addition to the nurse's affirmation, defendant provided copies of its COVID-19 policy and amendments thereto, as well as copies of the relevant governmental directives that informed defendant's policy.
The nurse's affirmation also explained the conditions underlying decedent's admission into the nursing home and his resulting care. Relevantly, in March 2020, decedent's care plan noted that he was at risk for an alteration in well-being because of visitation restrictions and the suspension of group activities due to COVID-19 and, in June 2020, he reported feeling down. Between April and July 2020, decedent's vital signs were taken in compliance with directives that it be done twice daily, and he exhibited normal ranges of temperature and oxygen saturation. In late June 2020, following potential exposure to COVID-19, decedent was placed on droplet precautions, which were ended approximately one week later. On the morning of July 22, 2020, decedent's vital signs were measured, and it was noted that his lungs exhibited crackling and wheezing. He underwent a chest X-ray and was prescribed various medications. Decedent's oxygen saturation dipped to 86% on July 23, 2020 and supplemental oxygen was administered, raising it to 96%. However, decedent's oxygen saturation decreased into the 70% range without supplemental oxygen on July 24, 2020. Decedent was transferred to Albany Medical Center on that day, where he subsequently died on August 9, 2020. In addition to the foregoing, defendant also supplied decedent's medical records.
Defendant's proof conclusively established that it met the three requirements of the EDTPA. In view of this, Supreme Court erred in concluding that defendant failed to establish immunity from suit thereunder. To the extent plaintiff's brief can be read as challenging the first and third requirements of the EDTPA, the nurse's affirmation established that defendant provided decedent with "health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law" and that those services were provided in good faith (Public Health Law former § 3082 [1] [a]; see Public Health Law former §§ 3081 [5] [a]; 3082 [1] [c]; Estate of Pierro v Carmel Richmond Healthcare & Rehabilitation Ctr., 241 AD3d 645, 647 [2d Dept 2025]; Whitehead v Pine Haven Operating LLC, 222 AD3d at 110). Similarly, relevant to the third requirement, defendant's proof demonstrates that decedent's "injuries were directly tied to COVID-19" (Madourie v Montefiore Med. Ctr., ___ AD3d ___, ___, 2026 NY Slip Op 00617, *1 [1st Dept 2026]; see Silva-Rios v New York Presbyt. Columbia Med. Ctr., [*4]___ AD3d ___, ___, 2026 NY Slip Op 00481, *1 [1st Dept 2026]; compare Damiani v WSNCH N., Inc., 244 AD3d 1059, 1062-1063 [2d Dept 2025]). As such, the proof established that any alleged negligent act or omission on defendant's part occurred during the course of its provision of health care services and that defendant's treatment of decedent was impacted by its decisions or activities in response to the COVID-19 pandemic and in support of the state's directives (see Public Health Law former § 3082 [1] [b]). Defendant therefore established its entitlement to EDTPA immunity for plaintiff's claims arising during the COVID-19 pandemic.
Neither of plaintiff's remaining claims for gross negligence and pre-COVID negligence — the only claims which would otherwise survive EDTPA immunity — are supported by more than "bare legal conclusions with no factual specificity" as required to survive defendant's motion to dismiss (Godfrey v Spano, 13 NY3d 358, 373 [2009]; see Byington v North Sea Assoc., LLC, 244 AD3d at 1179; Costiera v MMR Care Corp., 244 AD3d at 1182; Estate of Pierro v Carmel Richmond Healthcare & Rehabilitation Ctr., 241 AD3d at 647; Hyman v Richmond Univ. Med. Ctr., 239 AD3d at 618-619; Whitehead v Pine Haven Operating LLC, 222 AD3d at 110-111). Accordingly, Supreme Court similarly erred in denying defendant's motion seeking to dismiss these claims. As defendant was otherwise entitled to dismissal of all causes of action, the remaining contentions have been rendered academic.
Clark, J.P., Pritzker, McShan and Corcoran, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, motion by defendant CLR Troy LLC granted and complaint against it dismissed.

Footnotes

Footnote 1: Additional defendants were named in the underlying complaint and have not appeared.

Footnote 2: Defined thereunder, " 'COVID-19 emergency rule' means any executive order, declaration, directive or other state or federal authorization, policy statement, rule-making, or regulation that waives, suspends, or modifies otherwise applicable state or federal law regarding scope of practice" (Public Health Law former § 3081 [8]).
Footnote 3: This Court, in accord with the other Departments of the Appellate Division, has found that the 2021 repeal of the EDTPA does not apply retroactively (see Whitehead v Pine Haven Operating LLC, 222 AD3d at 109; see also Damon v Clove Lakes Healthcare & Rehabilitation Ctr., Inc., 228 AD3d 618, 619 [2d Dept 2024]; Hasan v Terrace Acquisitions II, LLC, 224 AD3d 475, 476-478 [1st Dept 2024]; Ruth v Elderwood at Amherst, 209 AD3d 1281, 1291 [4th Dept 2022]).